26585. POLLARD, receiver, *v.* BOATWRIGHT.

DECIDED MARCH 18, 1938.

*J. M. Fletcher, Beck, Goodrich & Beck,* for plaintiff in error.
*E. W. Maynard, Carlton Mobley, S. G. Jones,* contra.

MacINTYRE, J. Mrs. Boatwright sued H. D. Pollard, receiver of the Central of Georgia Railway, for the alleged negligent homicide of her husband, under the provisions of the Code, § 105-1302. The jury returned a verdict in her favor, and exceptions are taken to the overruling of the defendant's motion for new trial.

The material parts of the petition alleged in substance that the accident, resulting in the death of the plaintiff's husband, occurred shortly after the end of the day, at a public crossing in the City of Forsyth. The railroad at that point ran north and south, and looking north from this crossing, the tracks curved to the right at a point about 50 or 60 yards distant. The deceased drove his car south for a short distance along a road situated adjacent and parallel to the railroad tracks, and then turned his car sharply to the right on to a road which immediately crossed the tracks on an incline. When he got upon the crossing his car was struck by a train of the defendant coming from the north. It was alleged that the train was being operated at a high and negligent rate of speed, and in violation of a certain ordinance of the City of Forsyth regulating the speed of trains within borders; that the whistle was not blown and the bell was not rung. The petition also set forth the condition of the crossing and alleged that the same was not in good order as required by law.

 The first ground of the amended motion for new trial contains various assignments of error on the following charge of the court: "I charge you that the measure of damages in this case, if

you find in favor of the plaintiff against the defendant company, would be the full value of the life of the decedent, Mr. Boatwright, as shown by the evidence, without any deduction for necessary or other personal expenses of the deceased had he lived. In arriving at the full value of the life of the deceased, the jury may consider all the facts and circumstances of the case, including the age of the decedent, his physical health and strength, the labor and work which he performed, any wages he received, the value of any labor and work which he performed, and every other fact and circumstance which would throw light upon the value of his life. The law has reference to the financial value of his life, and it would be your duty to fix in dollars and cents the value of the life of the decedent, and if you find for the plaintiff in the case, gentlemen of the jury, the amount of your finding is entirely a matter within the purview of the jury. In arriving at the cash value of the decedent's life, it would be the duty of the jury to reduce to its present cash value such sum as would be earned by the decedent, or such sum that might be earned in the future. In reducing such sum to its present cash value you would use the legal rate of interest, which is seven per cent. per annum. You may make the calculation in reducing this sum to its present cash value by any correct method satisfactory to the jury. The object of the law is to give such a sum as, put out at interest at seven per cent. and exhausting a part of the principal each year, would produce each year what you find would be the value of the decedent's yearly services, and the entire sum would be exhausted at the end of the decedent's expectancy as you find it. In other words, the amount found, with addition of seven per cent. legal interest, would accomplish exactly such payments each year throughout the decedent's expectancy as you may find that the decedent's services would have been worth each year during that expectancy and would be exhausted at the end of his expectancy. The plaintiff has introduced in evidence what is called the 'Carlisle Mortality Tables.' This table is simply an aid to be used along with other evidence in determining what would be the expectancy of a person whose duration of life is under consideration. You are not obliged to use these tables. You may or may not use them, as you see fit, along with the other evidence in the case in determining the decedent's expectancy. You, yourselves, may arrive at the expectancy

of the deceased under the testimony in this case without any use of the mortality tables at all, and you may make the calculation reducing it to its present cash value by any correct method of calculation satisfactory to you. In determining the value of the services of the decedent, the jury may consider all the facts and circumstances of the case. You may consider his age at the time of his death, and the fact that a person rarely labors every day until his death or receives all the while a fixed income from his labor, nor does his capacity to earn money often remain undiminished to old age. In arriving at the amount to be allowed as damages, all these things should be borne in mind,—feebleness of health, actual sickness, loss of employment, voluntarily abstaining from work, dullness in business, reduction in wages, the increasing infirmities of age with the corresponding diminution of earning capacity, and other causes may contribute in greater or less degree to decrease the gross earnings of a lifetime. Proper consideration should be given to all these items in considering diminution in income from labor, or in considering the value of services in a lifetime."

In a suit by a widow for the wrongful death of her husband, under the Code, § 105-1302, the measure of damage recoverable is the "full value of the life of the deceased as shown by the evidence." The term "full value of the life of the deceased," is construed to mean the gross sum that the deceased would have earned to the end of his life, had he not been killed, reduced to its present cash value. The law fixes the basis of the jury's calculation, but does not prescribe any Procrustean method by which the damage must be arrived at. *Central of Georgia Railway Co.* v. *Minor,* 2 *Ga. App.* 804 (59 S. E. 81). In arriving at the amount of damages the jury should consider the age of the deceased at the time of his death, his health, his habits, the amount of money he was earning, his expectation of life, the probable loss of employment, voluntary abstinence from work, dullness in business, reduction of wages, increasing infirmities of age, with a corresponding diminution of earning capacity, and other causes which may contribute to illustration of the gross earnings of a lifetime. See, in this connection, *W. & A. R. Co.* v. *Moore,* 94 *Ga.* 457 (6) (20 S. E. 640); *Florida Central & Peninsular R. Co.* v. *Burney,* 98 *Ga.* 1 (26 S. E. 730); *Alabama Great Southern R. Co.* v. *Brown,*

138 *Ga.* 328 (75 S. E. 330); *Central of Ga. Ry. Co.* v. *Ray,* 129 *Ga.* 349 (2) (58 S. E. 844); *Central of Ga. Ry. Co.* v. *Anderson,* 43 *Ga. App.* 189 (3) (158 S. E. 333). We are of the opinion that the charge, which we have set out above in full, was sufficiently clear in instructing the jury as to the basis of their calculations in determining the "value of the life of the deceased," and therefore that it is not subject to the exceptions that it is lacking in essential particulars. If the defendant desired fuller and more explicit instructions on the measure of damages, a timely written request to charge should have been submitted in that connection. See *Radcliffe* v. *Maddox,* 45 *Ga. App.* 676 (5), 685 (165 S. E. 481), wherein a similar charge, but one not as full as the one here under consideration, was approved.

■ Immediately preceding the above-quoted charge, the trial judge instructed the jury as follows: "I charge you, gentlemen of the jury, that the charge which follows or which is about to be given, relates to a verdict for full damages for the value of the life of the deceased, without deductions. *The true rule for the measure of damages in this case, is the value of the life of the deceased to himself if he had lived.* Now, if you apply the rule of diminishing damages as I have heretofore given you in charge, that is, where both parties, if you find them to be at fault, are at fault, then the diminishing damage rule which I have given you in charge would apply, and it would be your duty then to reduce the damages, if you find for the plaintiff, by attributing to the deceased such fault as you find him guilty of at the same time." Exceptions are taken to the italicized portion of the above charge. It is contended that the law doesn't permit a recovery by the widow of "the value of the life of the deceased to himself if he had lived," but permits only a recovery of the gross sum that the deceased would be expected to earn during the remainder of his life, had he not been killed, reduced to its present cash value. The italicized portion of the charge can not be said to be an incorrect statement of the law, for the measure of damages allowed under Code, § 105-1302, "is the full value of the life of the deceased, irrespective of its real value to the person in whom the cause of action is vested." *Atlantic, Valdosta & Western Railroad Co.* v. *McDilda,* 125 *Ga.* 468, 470 (54 S. E. 140, 14 Am. St. R. 240). It is barely possible that, standing alone and without reference to

the other instructions given upon the measure of damages, the jury might have understood this statement to mean that they were to return a verdict according to the value the deceased would have placed on his life. However, when taken in connection with the whole charge, which we must presume the jury did, could it be reasonably said that they did not understand that the value of the life of the deceased referred to its financial value, as determined by the sum which the deceased would be reasonably expected to have earned to the end of his life, had he not been killed, and not to a sum of money at which the jury would arbitrarily estimate the deceased would have valued his life, which of course, would be inestimable? We think not. The assignment is therefore without merit.

■ Ground 8 of the amended motion for new trial is in part as follows: "Because the court erred in failing to instruct the jury that if they should find that the plaintiff's husband, at the time of the homicide, was violating a valid ordinance of the City of Forsyth, regulating the speed of automobiles in the City of Forsyth, he would be guilty of negligence per se, and that it would be a question for the jury to decide whether such negligence caused or contributed to his injury." The defendant's answer was in part as follows: "That the death of the plaintiff's husband was the result of his failure to exercise ordinary care for his own safety." Upon the trial it introduced a copy of an ordinance of the City of Forsyth limiting the speed of automobiles to twenty miles per hour. However, we are of the opinion that the assignment of error is without merit. The evidence nowhere indicates that at the time of crossing the railroad the deceased was violating the ordinance in question, nor is it inferable therefrom that the speed of his car prior thereto in any way contributed to his injury, but on the contrary it appears that before reaching the crossing he slowed down "almost to a stop," and after attempting to ascertain if a train was approaching, proceeded slowly across the tracks. The only testimony on this subject was that of the witness Clark, who was riding in the car, which was substantially as follows: "I know where Bramblett's crossing is located here in Forsyth. When we got to Bramblett's crossing and started to cross the railroad tracks we had slowed down. I judge we came down that road about twenty-five miles an hour, but he slowed down before he got to the

railroad-tracks. When we got to the railroad crossing we could not go straight across the tracks, we had to turn to the right a little. I don't know the name of the road we were on. The road comes from Ensign's mill down by that crossing, but I don't know the name of the road. The crossing is known as 'Bramblett's crossing.' . . Before we got on the tracks, Mr. Boatwright slowed the car down almost to a stop and asked Mr. Anderson if the way was clear back there and Mr. Anderson answered, 'The way is clear.' . . I could not say for certain whether or not Mr. Boatwright brought his car to a complete stop before he went on the crossing. I don't think he did. I think he slowed down a good deal. . . I say that I estimate that approaching this crossing we were driving about twenty-five miles an hour. That is what I estimate. As you approach the crossing there if you want to cross the railroad tracks you would have to turn to the right. The railroad is on your right when you approach to cross there. It is up somewhat of an incline. Mr. Boatwright slowed down as he came up there. I know that he slowed down. I don't know whether he changed gears or not."

It does not appear that because of the unlawful speed testified about by the witness Clark, that the deceased was unable to come to a complete stop before entering upon the tracks. The position of counsel for the plaintiff in error that if the deceased had not, immediately before reaching the crossing, been driving his car at an illegal rate of speed, that the train would have reached the crossing before he did, and that therefore the jury had the right to consider this speed as a contributing cause of the injury, we think is unsound in law, under the facts of this case. It is equally true, as pointed out by counsel for the defendant in error, that if the deceased had not been on a fishing trip that he would not have been coming along this road at the time of the accident, but such a fact is too remote and can not be considered as a contributing cause of the injury complained of, where the evidence relied on itself shows that before reaching the crossing the deceased brought his car almost to a stop and made an effort to ascertain whether a train was approaching, and, thinking that there was none, proceeded slowly across the track. His negligence, if any, as the proximate or a contributing cause of the injury, was not in the speed that he approached the crossing before slowing down, which was in violation

of the statute, but was, after slowing down to almost a stop, in not taking sufficient precaution in going on the tracks. If there had been any evidence that because of the excessive speed in approaching the crossing the deceased was unable to bring his car to a stop, or was thereby unable to use proper precaution before reaching the tracks, this would have presented an entirely different case.

■ The court charged the jury in part as follows: "I charge you, gentlemen of the jury, that if you believe from the evidence, that is, a preponderance of the evidence in the case, that the driver of the automobile, that is, the deceased, W. S. Boatwright, was in the exercise of ordinary care in the operation and use of his automobile on the highway at the time alleged, and the crossing, which of course is a part of the highway, and that he suffered the injuries which resulted in his death because of the negligence, or acts of negligence, as may be alleged in the petition, of the employees of the defendant, which negligence was the direct and proximate cause of such injuries, the plaintiff would be entitled to recover and you should so find by your verdict." In numerous other instances in the charge the trial judge left to the determination of the jury the question of negligence, and this charge, when considered with such other parts, can not be said to have intimated to the jury an opinion that the acts charged against the defendant were negligence. The assignment of error is without merit.

■ The petition as amended alleged in part "that on the incline approaching said crossing and between the rails of the said track there were holes from three to six inches deep, over which an automobile would have to travel in order to pass over said crossing, and by reason of these holes the said crossing was not in a reasonably safe condition for an automobile to pass over without choking down upon the track, and that to allow said holes on the incline leading to the crossing, and between the rails on the crossing, amounted to negligence per se which caused and contributed to the death of your petitioner's husband. . . That it was the duty of said defendant, his agents and employees, to have kept the said public crossing in good order at their expense, not only between the rails but also the width of land on both sides of the road allowed by charter appropriated by the company therefor, and as many feet beyond each way as is necessary for a traveler

to get on and off the crossing safely and conveniently. . . That the death of her husband was caused by the negligence of said defendant, his agents and employees, and that they were negligent as follows: . . (d) in that the agents and employees, as well as the receiver, failed to keep between the tracks on said public crossing, as well as the approaches thereto, in good order and in reasonably safe condition as required by law; (e) in that they permitted holes between the tracks upon said public crossing in violation of law." The defendant demurred to the allegations charging it with negligence per se in the maintenance of the crossing as follows: "Defendant says that as a matter of law to allow said holes on the incline leading to the crossing and between the rails on the crossing, did not and could not amount to negligence per se."

The Code declares: "All railroad companies shall keep in good order, at their expense, the public roads or private ways established pursuant to law, where crossed by their several roads, and build suitable bridges and make proper excavations or embankments, according to the spirit of the road laws." § 94-503. "Such crossings shall include the width of land on both sides of the road allowed by charter or appropriated by the company therefor, and as many feet beyond, each way, as is necessary for a traveler to get on and off the crossing safely and conveniently." § 94-504. Under the ruling of this court in *Central of Ga. Ry. Co.* v. *Dumas,* 44 *Ga. App.* 152 (7) (160 S. E. 814), a violation of the duty imposed upon railroads by these sections is negligence per se. See also *Platt* v. *Southern Photo Material Co.,* 4 *Ga. App.* 159 (2a) (60 S. E. 1068); *Lamb* v. *Robinson,* 144 *Ga.* 334 (87 S. E. 17). Whether a crossing in a certain condition, such as here alleged in the present petition, and as shown by the evidence, is in "good order . . according to the spirit of the road laws," is a question for the jury. The pleader may charge that a certain condition is a violation of the statute and therefore negligence per se, and the allegation is not subject to demurrer unless such condition could not amount to a violation of the statute. This is not true in the present case, and the allegations of the petition in this respect were not subject to the demurrer above quoted. The court charged the jury: "If you believe from a consideration of the evidence that the defendant failed to keep said public crossing in

good order, and approaches thereto for as many feet beyond each as was necessary for a traveler to get on and off of the same safely and conveniently, it would be negligence per se." This charge left to the determination of the jury the question whether the crossing was "in good order . . according to the spirit of the road laws," and properly so. This charge is not subject to the criticism that it places the duty on the railroad to keep the crossing in such order as to permit "a traveler to get on and off of same safely and conveniently." The charge only requires that the railroad keep the "approaches thereto for as many feet beyond each way as is necessary for a traveler to get on and off the same safely and conveniently" in good order, which is substantially the requirement of the statute. It follows from what we have said above that the court did not err in failing to charge the jury that "it would not be negligence per se for the defendant company to allow holes from three to six inches deep in the road on the crossing or its approaches, over which automobiles using said crossing would have to pass."

▇ Complaint is made in the tenth ground of the amended motion for new trial that "the court erred in failing to charge the jury that a duty rested upon the plaintiff's husband to exercise ordinary care in going upon defendant's railroad-track, and in failing to charge as to the effect of his negligence, if there was any, in going upon the defendant's track." We are of the opinion that the assignment is without merit. In a consideration of this assignment of error the following part of the charge is pertinent: "I charge you, gentlemen of the jury, that *if* you believe from the evidence, that is, a preponderance of the evidence in the case, that the driver of the automobile, that is, the *deceased,* W. S. Boatwright, *was in the exercise of ordinary care in the operation and use of his automobile on the highway at the time alleged, and the crossing, which of course is a part of the highway,* and that he suffered the injuries which resulted in his death because of the negligence, or acts of negligence, as may be alleged in the petition, of the employees of the defendant, which negligence was the direct and proximate cause of such injuries, the plaintiff would be entitled to recover and you should so find by your verdict. I charge you that the plaintiff would not be entitled to recover any damages if the deceased could, by the exercise of ordinary care, have

avoided any negligence of the defendant's employees after that negligence became apparent to the deceased, or if the deceased, by the exercise of ordinary care, could have discovered any negligence of the defendant's employees and could have avoided any injury or damage to himself because of such negligence. *The plaintiff is not entitled to recover damages from the defendant for any injuries to the deceased where the same is done by the deceased's own negligence.* If you find that the deceased and the defendant, that is, the defendant's employees, were both at fault, the plaintiff may recover provided you believe from the evidence that the deceased and the defendant's employees or agents were not equally at fault but that a greater degree of fault is attributable to the defendant than to the deceased, then, in that event, the damages shall be diminished by the jury in proportion to the amount of fault attributable to the deceased. If you believe that the deceased and the defendant were equally negligent and at fault, the plaintiff would not be entitled to recover any damages."

It seems to us, in reading the above-quoted part of the charge, that the court in two instances, which we have italicized, charged the principle which the assignment avers was omitted. While it is true that the principle was not stated in the language contended for, we do not think that such is required in the absence of a request. The charge did instruct the jury that the duty rested upon the plaintiff to exercise ordinary care, i.e., that he must not have been guilty of negligence proximately resulting in his death, and this was the important thing. Counsel cites as authority the case of *Central of Ga. Ry. Co*. v. *Cooley*, 44 *Ga. App.* 118 (2, 3) (160 S. E. 812). We believe that case to be distinguishable. There the judge repeatedly charged the jury that "a duty rested upon the plaintiff to exercise ordinary care to avoid the consequences of the defendant's negligence, and that this duty did not arise until the plaintiff either knew of this negligence or in the exercise of ordinary care should have known of it," and the only intimation in the entire charge of the court in that case of the principle contained in the Code, § 94-703, which the present assignment avers was omitted in the present case, was the italicized portion of the following charge: "As before charged, if the defendant was not negligent in any of the particulars charged in this declaration, or, if negligent, such negligence did not cause the injury to the plain-

tiff; *or if the only cause of the injury was the negligence of the plaintiff herself,* or if the plaintiff and the defendant were equally negligent, or if the plaintiff failed to exercise ordinary care to have avoided the consequences of the defendant's negligence, if any, then there could be no recovery in this case." This the court held insufficient. However, in the present case the judge not only charged the jury that if the deceased was in the exercise of ordinary care (i.e., was not guilty of negligence) in the operation of his automobile on the highway and on the crossing etc., that the plaintiff could recover, but specifically charged the jury that "the plaintiff is not entitled to recover damages from the defendant for any injuries to the deceased where the same is done by the deceased's own negligence," and had theretofore given in charge the definition of negligence. Moreover, is not the ruling in *Wrightsville & Tennille R. Co.* v. *Gornto,* 129 *Ga.* 204 (4) (58 S. E. 769), that "Where, in a suit to recover damages for the homicide of a person killed upon a public railroad crossing by a train of the defendant company, the court charges the jury that if they believe that the railroad company was negligent and that the deceased by ordinary care and diligence could have avoided the consequences of such negligence, the plaintiff can not recover, it is not error to fail to charge that the deceased was under the duty of exercising ordinary and reasonable care and diligence before entering upon the railroad crossing, when such instruction is not requested in writing by the defendant," in conflict with the ruling in the *Cooley* case, supra? Quære. We do not think that the charge of the court above quoted confused the two defenses available to the defendant company as stated in the Code, §§ 94-703, 105-603. They were not given in such a manner as to qualify one with the other, as was done in *Americus, Preston & Lumpkin R. Co.* v. *Luckie,* 87 *Ga.* 6 (13 S. E. 105), and *Macon, Dublin & Savannah R. Co.* v. *Moore,* 99 *Ga.* 229 (25 S. E. 460), but were stated in separate sentences as separate propositions of law.

Headnotes 7 and 8 are self-explanatory, and will not be discussed. It can not be said under the evidence introduced that the verdict was excessive as a matter of law. The evidence being sufficient, in the opinion of the court, to support the verdict, and no errors of law being shown, the trial judge did not err in overruling the motion for new trial as amended.

*Judgment affirmed. Guerry, J., concurs. Broyles, C. J., dissents from the rulings in headnotes 1, 2, 3, and 6 of the decision.*