66404. RELIANCE INSURANCE COMPANY v. BRIDGES et al.
66405. AVANT TRUCKING COMPANY, INC. v. BRIDGES
et al.
66406. BILL COX EXCAVATING COMPANY, INC. v.
BRIDGES et al.
66407. QUEEN CITY CONSTRUCTORS, INC. v. BRIDGES
et al.

McMurray, Presiding Judge.

These appeals arise from a wrongful death action brought by the parents of a seven-year-old child who died from injuries sustained in a multiple vehicle collision on August 7, 1980. The events leading to the collision were as follows: Employees of Queen City Constructors, Inc. (Queen City) were laying cable along U. S. Highway 80, a two-lane road. Two employees were sent to pick up a "lowboy" tractor-trailer which was parked on the side of the highway and, in attempting to make a U-turn across the highway, caused the trailer to become stuck and block both lanes of traffic. While Lee, one of the Queen City employees, made preparations to remove the trailer, Newton, the other Queen City employee, attempted to stop traffic traveling in an easterly direction on Highway 80. However, no flags, signs, flashers or other warning devices were deployed either east or west of the stuck trailer. Seven-year-old Tracey Bridges was a passenger in the cab of a pickup truck proceeding in an easterly direction and driven by her grandfather, which was the first vehicle stopped by Newton.

As Lee attempted to maneuver the trailer off the highway, he saw and heard two sand trucks coming close together over the hill going west in the opposite lane of traffic from the pickup truck. These trucks were owned by Bill Cox Excavating Company (Cox) and

driven by Cox employees, but were operating under a Georgia Public Service Commission permit issued to Avant Trucking Company (Avant). The loads of sand were owned by Avant and being hauled by Cox to the Queen City construction site. Lee waved for the lead truck to stop, but it did not. The driver, fearing that the truck close behind him could not stop if he did, jumped from the cab, allowing it to roll free at a speed of 55 to 70 m.p.h. The sand truck crossed the center-line of the highway, struck the tractor portion of the lowboy tractor-trailer truck, knocking it off the highway, and proceeded 66 feet further where it collided with the pickup truck. The second truck was able to avoid a collision by following the path of the first truck. Tracey Bridges suffered extensive injuries which led to her death several days later.

Upon the death of their daughter, the plaintiffs Charles Emmett Bridges and Erma D. Epps brought suit against Queen City, Cox, Avant and Reliance Insurance Company (Reliance), Avant's public liability insurance carrier.

After a lengthy trial, a jury verdict in the amount of $1,200,000 was returned in favor of the plaintiffs against all defendants, and a judgment was entered. Various post-judgment motions made by each defendant were denied by the trial court, and appeals were taken to this court. *Held:*

1. A substantial number of objections raised at trial involved evidence and jury charges concerning the agency relationship of the truck driver to defendants Avant, Cox and Reliance. The following facts established by evidence introduced at trial were undisputed.

Avant is a common carrier engaged in the business of hauling sand, gravel and such commodities around the state, particularly the middle Georgia area. In some instances Avant owns the commodities and hauls to customers who have contracted to purchase them, and at other times transports products owned by its customers. Avant was licensed by and operated under a Class B certificate of operation from the Georgia Public Service Commission (PSC), under which it was required to and did carry and have on file with the PSC a liability insurance policy issued by Reliance for the protection of the public caused by its negligence or that of its drivers. In the operation of its business Avant leased four tractor-trailer trucks and drivers from Cox. Pursuant to the terms of a written lease agreement, Avant paid for the use of the trucks and drivers on a daily ton/mile basis with fuel and repair costs deducted from the payments. As required by the PSC certificate of operation, Avant inspected and operated the leased vehicles as if it owned them, and Avant's name, address, telephone number and PSC certificate number were painted on both sides of the trucks. The drivers were hired and paid by Cox, and Cox

made all social security and withholding tax deductions and also provided workers' compensation coverage. The usual daily procedure was for the drivers to take the trucks from the Cox shops, where they were kept overnight, to Avant each morning. There they would fill them with gas and be inspected by Avant, then transport the products according to Avant's instructions. Avant could not terminate the employment of a Cox driver; neither could it change a driver from one truck to another, nor alter a driver's duties. However, if for any reason Avant were displeased with a driver it could require Cox to replace him.

Avant, Cox and Reliance all assert that it was error for the trial court to charge on "dual agency" with respect to the relationship of the driver of the truck causing the death of Tracey Bridges, to the owner (Cox) and the lessee (Avant). The principle of dual agency is ordinarily applied in workers' compensation cases to avoid a second recovery in tort from a subcontractor after receiving compensation benefits from the general contractor. See, e.g., *U. S. Fidelity & Guaranty Co. v. Forrester,* 230 Ga. 182 (196 SE2d 133). The charge given, however, as requested by the plaintiffs, presented a basis for imputing liability to both Cox and Avant, and the jury was instructed "that it's possible for a person to be the agent of two principals, and if you should find that [the driver] was acting within the scope of his — of the business of both [Cox] and [Avant], and furthering the business interest of both of these defendants, then and in that event, I charge you that any negligence on the part of [the driver], should you find any, would be imputable to both these defendants. On the other hand, should you find that the negligence, if any, of [the driver] was applicable only to one of these defendants . . ., if he was the agent of only one of these defendants, then, of course you would not be authorized to find against the other defendant."

It cannot be said that the charge given on dual agency was reversible error in this case as a matter of law. "Ordinarily, one is not the servant of two masters, but the courts of this State have recognized the principle that one may be the servant of two masters and subject to the demands of both or either. [Cits.]" *Merry Bros. Brick &c. Co. v. Jackson,* 120 Ga. App. 716, 719 (171 SE2d 924). "It is a well established rule that an instruction is not abstract or inapplicable where there is any evidence, however slight, on which to predicate it. [Cit.] 'To justify a charge on a given subject, it is not necessary there should be direct evidence going to that point; it is enough if there be something from which a legitimate process of reasoning can be carried on in respect to it.' [Cits.]" *East Side Auto Parts v. Wilson,* 146 Ga. App. 753 (2) (247 SE2d 571). However, each of the defendants asserts that the charge was prejudicial to it on a

particular basis or in conjunction with other errors.

a. Avant contends that it should have been exonerated as a matter of law from any agency liability based upon the premises expounded in three decisions involving leased vehicles. In the first of these, *Mitchell v. Burden Bros.,* 126 Ga. App. 75, 77 (189 SE2d 909), this court, quoting with approval from *Albert v. Hudson,* 49 Ga. App. 636 (1) (176 SE 659), stated: " 'Where the owner of an automobile truck hires it, together with his servant who operates it, to another person, to be paid for at so much an hour, for use in the hauling of gravel for the latter, notwithstanding the work is performed under the direction and supervision of the person to whom the truck and the servant are hired and this person directs the servant as to what gravel to haul, where to haul it, and when to haul it, and this is the only supervision and control he exercises over the truck and the servant, and he has no supervision, direction, or control over the servant's mechanical operation of the truck, and has no right to discharge the servant or to put another one in his place in the operation of the truck, although he may have a right to discharge the unit consisting of the truck and the servant by discontinuing their service, the servant, in the operation of the truck, is the servant of the owner and not of the other person.' "

In *Montgomery Trucking Co. v. Black,* 231 Ga. 211, 212-213 (200 SE2d 882), the Supreme Court followed the principles enunciated in *Mitchell v. Burden Bros.,* supra, together with former Code § 12-203 (now OCGA § 44-12-62 (a), effective November 1, 1982) which provides: "The engagements of the hirer of things are, to put the thing to no other use than that for which it is hired; to take ordinary care in its use; to redeliver at the expiration of the bailment; and to comply generally with the terms of the hiring." Former Code § 12-203, supra, further provides that "[i]f the bailor sends his own agents with the thing bailed, as a driver for his horse, then the hirer is bound, either to the bailor or to third persons, only for the consequences of his own directions and for gross neglect." The lease agreement in *Montgomery Trucking Co. v. Black,* supra, which was similar in the control and operation aspects to the one here, also contained a clause declaring that the leased truck was "under the complete control and direction" of the owner and not the lessee trucking company. Id. at 212. The court there held that the statute operated "to relieve the trucking company of any liability as a matter of law" unless it was alleged or shown by the record "that the collision occurred as a result of any directions given the driver by the trucking company, or of any gross neglect," but that in any event the contract was controlling as to the responsibilities of the parties. Id. at 213.

The third case relied upon by Avant, *Farmer v. Ryder Truck*

*Lines,* 245 Ga. 734, 741 (266 SE2d 922), also involved the terms of a lease agreement which "clearly [showed]" that the lessee trucking company "exercised no control" over the owner's drivers. The employee driver of the owner-lessor of the truck leased to the trucking company was held to be a statutory employee of the trucking company, making the trucking company subject to workers' compensation law but immune to suit in tort. "The rationale was that under federal law interstate motor carriers are deemed to be responsible for the acts of drivers operating any trucks under the name of the common carrier, and therefore the drivers are employees of the carrier." *Garrett v. Superior Trucking Co.,* 162 Ga. App. 558, 559 (290 SE2d 528).

It therefore appears that insofar as the principles of bailment under common law are concerned, the hirer of the driver is liable for the driver's negligence only if the injuries to third persons caused by the driver are the consequences of the hirer's own directions, or for gross neglect. *Montgomery Trucking Co. v. Black,* 231 Ga. 211, supra.

However, the lease involved in *Montgomery Trucking Co. v. Black,* supra, was not subject to and did not comply with either the ICC or the identical PSC rules and regulations governing common carriers. See *Farmer v. Ryder Truck Lines,* 245 Ga. 734, supra at 738, n. 4. At least for workers' compensation purposes, the reasoning of the federal law, that interstate carriers are responsible for the acts of all drivers operating trucks under the name of the carrier, has now been adopted as state law. *Farmer v. Ryder Truck Lines,* supra. Another determinative factor is, if the terms of the lease agreement itself clearly specify which of the parties is deemed to exercise control over the driver.

In the instant case, while there is no dispute that a written lease agreement existed, it appears that none was introduced in evidence and no copy is found or cited to in the record on appeal. Because of the conflicting legal theories and standards and the lack of evidence that there was a controlling contractual clause, we conclude that the trial court correctly determined that Avant, and hence Reliance, as Avant's liability insurer, should not be exonerated from liability as a matter of law.

b. Nor did the trial court err in refusing to charge on borrowed or loaned employees, as asserted by Cox. The "borrowed servant" doctrine applies only where an employee leaves the control of the general master and for a particular "occasion" is under the complete and exclusive control of a special master, which was not the fact here. See *Pavuk v. Western Intl. Hotels,* 160 Ga. App. 82, 83 (286 SE2d 319); *Cooper v. Plott,* 121 Ga. App. 488, 489 (2) (174 SE2d 446).

c. Cox also protests the trial court's failure to charge upon

request that the mere ownership of a vehicle, standing alone, does not create any agency relationship between the owner and driver if there is any evidence to the contrary. This statement of the law was derived from *Red Top Cab Co. v. Hyder,* 130 Ga. App. 870 (204 SE2d 814), and also has no relevance to the facts here in dispute, pertaining rather to a situation where the owner of the leased vehicle has no control over the lessee driver.

d. In *Farley v. Continental Ins. Co.,* 150 Ga. App. 389 (258 SE2d 8), this court held that a suit against an insurer for a motor carrier operating under a PSC certificate was ex contractu, based on its contract with the carrier for the protection of the public as a third party beneficiary. Thus, where there is no "cognizable action against the insured, as tortfeasor, there can be no vicarious cause of action against the insurer contractually." *Harris v. Sampson,* 162 Ga. App. 241, 244 (290 SE2d 165). Reliance advances the theory that the dual agency charge was improper as to it because Avant was not engaged in operating under its PSC certificate at the time of the collision, but was simply hauling its own property. We do not agree. This was at the least a question of fact; if the driver is found to be driving the vehicle in the usual manner a presumption arises that he is acting in the scope of his authority. "Even if the facts derived from the presumption be refuted by uncontested evidence, [the issue] must be determined by a jury. [Cits.]" *Dove v. Nat. Freight, Inc.,* 138 Ga. App. 114, 116 (5) (225 SE2d 477).

2. A witness from the Georgia Public Service Commission was allowed while testifying to read into evidence the PSC rule dealing with the certification of all vehicles leased by a motor common carrier, which became effective March 1, 1979. It was subsequently developed, however, that the lease between Cox and Avant was executed in January of 1979. A copy of the rules was tendered and excluded, but this testimony was allowed to remain over objection. The court then instructed the jury that "insofar as this case is concerned, the [Georgia Public Service] commission did issue, according to the evidence, to Avant Trucking Company, Inc. a Class B certificate of public convenience and necessity which authorized [Avant] to transport property between all points in Georgia over no fixed route, subject to all applicable rules and regulations of the commission and the Motor Common Carrier Act of 1931. I further charge you that the certificates of public convenience and necessity issued to [Avant] were granted subject to all of the commission's rules and regulations just as fully as if they had been written out."

Avant complains that the jury was instructed to apply rules of the PSC which were applicable at the time the lease of the parties was executed, but that they did not have a copy of the correct rules before

them. Reliance takes exception to the fact that the rule read to the jury placed exclusive control of the driver on the lessee, which Reliance contends virtually amounted to a direction of liability not only as to Avant but also as to it, even though Avant was not at the time in question a motor common carrier as defined thereunder. Conversely, Cox insists that all the PSC rules and regulations should have been admitted in evidence and the jury charged that such rules became a part of the lease agreement and exonerated Cox from liability as a matter of law.

It was conceded at trial by all parties that Avant was a motor common carrier operating under a Class B certificate issued by the Georgia Public Service Commission at the time of the collision. As such Avant was subject to, and in fact was in compliance with, all rules and regulations then in effect as adopted by the PSC under its delegated powers to regulate the trucking industry for the safety of the general public. It has not been shown how, or if, the rules in evidence differed from the rules in effect at the time in question. The Georgia Motor Common Carriers Act of 1931 specifies that all "[s]uch rules and orders so approved by the commission shall have the same dignity and standing as if such rules and orders were specifically provided in this article." Former Code § 68-629 (now OCGA § 46-7-27, effective November 1, 1982). The court properly admitted in evidence such rules as were relevant and material to the issues made by the pleadings. *Maner v. Dykes,* 55 Ga. App. 436, 438 (3) (190 SE 189).

However, the violation of a valid rule of the PSC is negligence per se only if it was the proximate cause of the injury of the party complaining of the infraction. *Southern R. Co. v. Martin,* 125 Ga. App. 653, 655 (1) (188 SE2d 819). As indicated by our previous discussion of the conflicting rationales imputing liability in multiple agency situations, we think the trial court correctly submitted the issue of control to the jury. While there was ample evidence of record that the driver was the employee of Cox even while on the business of Avant and remained to a large extent under the exclusive direction and control of Cox, Avant painted its name, address, telephone number and PSC certificate number on both sides of the truck, making it an Avant vehicle insofar as the public was concerned. Thus, although Avant might be liable for the negligent acts of the leased driver as a matter of law, Cox also could be liable under the applicable Georgia common law. See Simmons v. King, 478 F2d 857, 867 (5th Cir. 1973).

It follows that it was neither error to refuse to allow copies of all the PSC rules and regulations in evidence, nor to fail to charge the jury that such rules governed the relationship between Cox and

Avant as a matter of law. The content and intent of the pertinent rules were adequately presented and argued, and the charge of the court as a whole effectively apprised the jury as to what weight it should place on these rules in determining liability.

3. Cox complains that during testimony of Avant's president, this witness answered when asked to explain what a certificate of insurance meant, that Cox was supplying workers' compensation and public liability insurance on all its equipment. Cox moved for mistrial and enumerates as error the denial thereof. However, the trial court gave a lengthy instruction to the jury to disabuse their minds of anything other than workers' compensation and disregard the last portion of the answer altogether as there was a named insurance company in the case by virtue of the PSC rules, which would be charged to them later.

"In Georgia the injection into a case of testimony pertaining to liability insurance does not automatically require a grant of a motion for a mistrial. It is only where the testimony is so obviously prejudicial in its nature that its adverse effect cannot be eradicated from the minds of the jury or its consequences avoided by proper cautionary instructions from the court, that a mistrial should be granted. [Cits.] The determination as to whether these harmful factors are present in a case necessarily rests in the discretion of the trial judge. Appellate courts should never interfere with the exercise of that discretion unless it is made to appear that wrong or oppression has resulted from its abuse. This principle is historically respected in this jurisdiction. [Cit.] . . . Under the facts of this case we cannot say the judge abused his discretion." *Wallace v. Cates,* 120 Ga. App. 228 (170 SE2d 40). We think this is particularly true here. Not only is a public liability carrier a third-named defendant, but the fact of other insurance was not deviously injected by plaintiffs or plaintiffs' attorney, which is usually the case when a mistrial is declared. Here it was merely inadvertently mentioned by one defendant as to another defendant's liability coverage.

4. Cox enumerates as error the admission in evidence over proper objection of photographs of the scene of the collision and surrounding areas taken by the plaintiffs some time after the date of the incident. Cox introduced a number of current photographs which showed that on the date of the collision, between the top of the hill and the bottom where the lowboy blocked the highway, the view of the driver was obscured by trees and bushes. In the plaintiffs' photographs, taken some months after the collision, the trees and bushes had been cut down. However, there was testimony by a deputy sheriff who traveled this road "practically every day" that he never noticed any change in his ability to see by virtue of the foliage being

cut down. Also, in his charge the trial judge informed the jury that all the pictures "were introduced and were admitted by the court for whatever purpose you deem proper, keeping in mind that certain pictures were taken at a later time than this event under investigation, and you will have to consider in your deliberations whether or not there was any change, and if so, you would apply that in your thinking and in your deliberations, but the pictures are there for whatever use you want to make of them . . ." Such evidence ought to be received cautiously, as it was here, and its admission was not reversible error. *Brown v. Barnes,* 162 Ga. App. 383, 384 (2) (290 SE2d 483).

5. The trial court also admitted the results of various truck speed-stopping tests conducted by Queen City which Cox objected to on the ground that they were not performed under similar circumstances or conditions as they existed at the time and scene of the collision. The experiment in question was conducted using a tractor-trailer similar to that involved in the collision with a similar weight load, although it was gravel and not sand. Both trucks had good brakes, and the driver used in the experiment testified that both trucks would have substantially the same stopping ability. The experiment was conducted once at 55 m.p.h. and once at 66 m.p.h. with the driver applying the brakes at the same place Cox's driver testified that he saw the lowboy and applied his brakes. In tests at both speeds the Queen City truck was able to come to a stop several hundred feet before the point of impact.

Cox contends that because the tests were not conducted in an emergency situation under similar circumstances, they did not fairly illustrate the point in issue, i.e., whether Cox's driver should have been able to stop his truck short of the lowboy blocking the highway; and that the trial judge's failure to caution the jury in his final charge that the tests should only be given such weight as they deemed appropriate in light of the fact they were conducted under different conditions constituted reversible error.

The experiments complained of were relevant to the issues being tried and were sufficiently similar to the conditions existing at the time of the collision to be submitted to the jury. " 'The admission of testimony as to experiments rests largely in the discretion of the trial judge, and the exercise of this discretion will not be controlled unless manifestly abused. The weight of such testimony is for the jury, and varies according to the circumstances of similarity which they may find to exist between the experiments and the actual occurrence under investigation. [Cits.]' [Cits.] We find no abuse of the trial court's discretion." *Meadows v. Oates,* 156 Ga. App. 242, 244 (3) (274 SE2d 634). Accord: *Blount v. Moore,* 159 Ga. App. 80, 83 (2) (282

SE2d 720). See generally Agnor's Ga. Evidence 191, § 10-16.

6. Refusal of the trial court to charge the principle of law contained in former Code Ann. § 68A-1001 (Ga. L. 1974, pp. 633, 675) (now OCGA § 40-6-202, effective November 1, 1982), that no person shall stop, park or leave standing any vehicle upon the roadway when it is practicable to stop, park or leave the vehicle off the roadway, affords no basis for reversal as such a charge was not adjusted to the evidence. Neither the lowboy and tractor which were stuck in the roadway, nor the pickup truck driven by the decedent's grandfather, was stopped, standing or parked as contemplated by the statute, which obviously refers to bringing a vehicle to a halt in a moving lane of traffic rather than to an emergency situation such as the one here. Accord: *Blake v. Continental Southeastern Lines,* 161 Ga. App. 869, 873 (1) (289 SE2d 551).

7. There was likewise no error in the refusal of the trial court to give Cox's requested charge under former Code Ann. § 68A-902 (Ga. L. 1974, pp. 633, 671) (now OCGA § 40-6-391, effective November 1, 1982) which prohibits driving a vehicle while under the influence of alcohol. While there was evidence presented that the blood alcohol content of the decedent's grandfather was .07 percent at the time of the collision, this fact standing alone is of no significance as to his ability to safely operate his vehicle. A blood alcohol level in excess of .05 percent but less than .10 percent does "not give rise to any presumption that the person was or was not under the influence of alcohol." Former Code Ann. § 68A-902.1 (b) (2) (Ga. L. 1974, pp. 633, 672; 1977, p. 1036) (now OCGA § 40-6-392 (b) (2), effective November 1, 1982). There was no evidence that the grandfather was either under the influence of alcohol, or under the influence of alcohol to a degree which rendered him incapable of driving safely, which are the prerequisite elements of violating former Code Ann. § 68A-902 (OCGA § 40-6-391), supra. "There is no duty to charge on possible issues in a case which are not supported by the evidence. [Cits.]" *Vann v. State,* 153 Ga. App. 710, 711 (3) (266 SE2d 349).

8. The charge relating to backing a vehicle so as not to interfere with traffic (former Code Ann. § 68A-1102 (Ga. L. 1974, pp. 633, 679) (now OCGA § 40-6-240, effective November 1, 1982)) was not applicable to the evidence, as asserted by Cox. The testimony of the Queen City employees attempting to remove the lowboy was that it became stuck when they attempted to move forward and make a U-turn across the highway. The trial court correctly refused to give this charge. *Vann v. State,* supra.

9. Nor did the evidence support Cox's requested charge on former Code Ann. § 68A-603 (Ga. L. 1974, pp. 633, 664) (now OCGA § 40-6-122, effective November 1, 1982), which prohibits the starting of

a vehicle which is stopped, standing or parked unless and until such movement can be made with safety. The tractor and lowboy were started and backed with no difficulty or lack of safety. The problem and negligence arose with the attempt to make the U-turn across the highway. Compare *Bramlett v. Hulsey,* 98 Ga. App. 39, 43 (5) (104 SE2d 614).

10. Cox challenges the jury instruction pursuant to former Code Ann. § 68A-802 (Ga. L. 1975, pp. 1582, 1583; 1982, p. 1290) (now OCGA § 40-6-181, effective November 1, 1982) insofar as it related to the speed limit of 35 miles an hour in any urban or residential district as set forth in subsection (1). The court also charged subsection (2) of the statute limiting the speed in all other locations to 55 miles per hour. The speed limit in the area of the collision was agreed by all parties to be 55 miles per hour, and most of the jurors indicated on voir dire that they were familiar with the location, which was not a residential area. From the numerous photographs introduced in evidence, it would have been most unlikely for anyone not familiar with the location to be misled by the charge to conclude that the area was a residential one. While the reference to the 35 m.p.h. speed limit was inappropriate, the charge could not have been harmful and did not constitute reversible error. *Bynum v. Standard Oil Co.,* 157 Ga. App. 819, 822 (4) (278 SE2d 669). Accord: *German v. D. O. T.,* 162 Ga. App. 785, 786 (293 SE2d 50).

11. Cox takes exception to the trial court's refusal to. charge upon request from former Code § 38-119 (now OCGA § 24-4-22, effective November 1, 1982), that "[w]here a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, . . . a presumption arises that the charge or claim against him is well founded . . ."

As previously discussed, Cox based its defense on the theory that the PSC rules and regulations and the lease agreement between it and Avant acted to relieve it from liability as a matter of law for any negligence on the part of its driver. It was apparent during the trial, however, that although a copy of the lease was required by the PSC regulations to be maintained in the truck itself, and both Avant and Cox had equal access to it, neither was able to produce a copy. Moreover, there was ample evidence as to the fact and substance of the lease agreement presented during the trial. As pointed out by plaintiffs, any provision therein as to control of the driver for respondeat superior purposes might well be relevant in future litigation between Cox and Avant for contribution, but was of relative unimportance in this suit against all the parties alleged to be responsible for Tracey Bridges' wrongful death. This enumeration presents no grounds for reversal.

12. Avant protests the refusal of the trial court to give its requested charge that the negligence of one who is not a party to the action is not chargeable to the defendants if the negligence of the unnamed party is the proximate cause of the injury. Avant argues that this charge was applicable because the evidence showed that the operator of the pickup truck in which the decedent was a passenger could have seen in the exercise of ordinary care that a collision would occur in sufficient time to move the pickup truck or take other evasive and protective action, but did nothing.

"Questions of negligence, diligence, contributory negligence, proximate cause and the exercise of ordinary care for one's protection ordinarily are to be decided by a jury, and a court should not decide them except in plain and indisputable cases. [Cit.]" *Piland v. Meli,* 143 Ga. App. 783, 784 (240 SE2d 193). This case falls within the exception. In our opinion the trial court properly refused to give this charge as the jury could not have reasonably concluded from the evidence that Tracey Bridges' injuries were attributable to or proximately caused by any negligent actions of the driver of the pickup truck in which she was a passenger. See *Lankford v. Trust Co. Bank,* 141 Ga. App. 639, 641-642 (2) (234 SE2d 179).

13. Queen City enumerates as error the failure of the trial court to give three requested charges on the issue of intervening proximate cause, contending that the jury was not instructed on these principles of law in any manner whatsoever even though they embodied Queen City's main defense in the case. Contrary to Queen City's position, review of the transcript reveals that the instructions given in the general charge as to concurrent negligence, intervening cause and proximate cause, while not in the exact language requested, were adequate to inform the jury of the pertinent principles of law. Indeed, to have charged "in the language requested in most instances would have amounted to instructions that would be argumentative and prejudicially in favor of the defendant [Queen City]; and we find no merit in any of them." *Kelley v. Austell Building Supply,* 164 Ga. App. 322, 331 (9) (297 SE2d 292). " '[T]here should be no reversal where the language [of the charge as given] conveys correctly the intent of the law and is so framed as to be applied with understanding to the fact situation.' [Cit.]" *Evans v. DeKalb County Hosp. Auth.,* 154 Ga. App. 17, 20 (4) (267 SE2d 319). Accord: *Gates v. Southern R. Co.,* 118 Ga. App. 201, 203-204 (3 (a)) (162 SE2d 893).

14. Queen City also complains of the trial court's refusal to charge any of its written requests regarding the duty of a driver to maintain a diligent lookout or to avoid colliding with a vehicle parked in the highway not obscured from view which can be seen in time to avoid a collision. Clearly the evidence did not warrant these

instructions. From the testimony of the two Cox/Avant truck drivers and a witness who had driven behind the two trucks for some distance, it is plain that the first driver saw the lowboy trailer blocking the roadway as he rounded the curve and crested the hill and immediately applied his brakes. However, the testimony of Queen City's expert who reconstructed the collision, as well as the speed stopping tests it conducted, indicates excessive speed on the part of the drivers. The State Patrol officer who investigated the collision also stated that there were two causes for it: the Queen City vehicle blocking the road and the lead Cox/Avant truck driven too fast. Any negligence on the part of this driver was not due to his failure to look out or avoid, but to the excessive speed at which he was traveling, prior to any negligence on the part of Queen City's employees. Any charge given the jury must be authorized and supported by evidence in the record. See *Exum v. Long,* 157 Ga. App. 592, 595 (4) (278 SE2d 13). These charges were not authorized by the evidence.

15. All four defendants assign error on the jury instruction that the measure of damages was the value of the life of the child "to herself" had she lived, asserting that this was an incorrect statement of the law, was clearly prejudicial, and resulted in a grossly excessive verdict of the jury.

The charge given as to the measure of damages in its entirety was as follows: "Now, if you should find that the death of Tracey Bridges was the result of the negligence of the defendants or any of them, then I charge you you should award plaintiffs damages in an amount equal to the full value of the life of Tracey Bridges as shown by the evidence, without deduction for necessary or other personal expenses of Tracey Bridges had she lived. Damages in a wrongful death action are assessed from the deceased's standpoint, not from the plaintiffs'. The true value for the measure of damages in this case is the value of the life of Tracey Bridges to herself had she lived. Now, in ascertaining the amount of damages to be allowed the plaintiffs in this case, if you allow damages, the jury is not restricted to any fixed rule in the mode of establishing or estimating the value of the life of the decedent child. The rule for the jury in determining damages in a case of this type is the enlightened consciences of upright and impartial jurors acting under the sanctity of your oaths. You may take into consideration your own personal knowledge of human affairs, and also your personal experience in arriving at a verdict, should you find that a verdict should be awarded to the plaintiffs in this case. You may also consider the child's age, her life expectancy, her health, mental and physical development, and her family circumstances among other things that you may decide to reach the full value of the life of this child. Now, ... I charge you that you may determine the life

expectancy of a person when his or her age is shown without any other direct evidence in the case. You're also entitled to consider any evidence pertaining to his or her health, habits or surroundings in deciding that matter, and I further charge you that there's another way in which you may determine the life expectancy of a person that's been introduced into evidence, a copy of the annuity mortality table for 1949 ultimate." The judge then charged on how to use the mortality table, and that the jury were not bound by it.

The language referring to the value of the life of Tracey Bridges *to herself* was apparently taken from *Pollard v. Boatwright,* 57 Ga. App. 565, 569-570 (2) (196 SE 215), a suit by a widow for the wrongful death of her husband, where this court considered an exception to the charge given by the trial court that: "*[t]he true rule for the measure of damages in this case, is the value of the life of the deceased to himself if he had lived.*"

Therein (*Pollard v. Boatwright,* supra), this court reasoned that the charge "can not be said to be an incorrect statement of the law, for the measure of damages allowed under Code § 105-1302, 'is the full value of the life of the deceased, irrespective of its real value to the person in whom the cause of action is vested.' *Atlantic, Valdosta & Western R. Co. v. McDilda,* 125 Ga. 468, 470 (54 SE 140 . . .). It is barely possible that, standing alone and without reference to the other instructions given upon the measure of damages, the jury might have understood this statement to mean that they were to return a verdict according to the value the deceased would have placed on his life." However, when taken in connection with the whole charge, the court therein held it could not be reasonably said that the jury did not understand that the value of the life of the deceased referred to all other factors given in the charge. See *Pollard v. Boatwright,* 57 Ga. App. 565, supra at 569-570. The charge given in the instant case, "value of the life . . . to herself had she lived" was thus criticized in *Pollard* (see above), but found not to be harmful in considering the charge as a whole. The right to recover "the full value of the life of the child" is afforded the parents for the homicide of a *child* under former Code Ann. § 74-108 (b) (1) (3) (Ga. L. 1979, pp. 446, 493; 1980, p. 1154) (now OCGA § 19-7-1 (c) (1) and (3), effective November 1, 1982), and specifically provides for a determination of same under the meaning given in former "Chapter 105-13" (now Chapter 4 of OCGA Title 51). Former Code Ann. § 74-108 (b) (4), supra, (now OCGA § 19-7-1 (c) (4)) specifies that the term "full value of the life" for purposes of this statute is defined in Chapter 105-13 (Code § 105-1308) (now OCGA § 51-4-1, effective November 1, 1982), as "the full value of the life of the decedent without deduction for necessary or other personal expenses of the decedent had he lived." In arriving at such amount it is the

"enlightened consciences" of the jury which will lead to the fixing of the damages, where the child is too young to have provided a basis for otherwise determining a financial loss to the plaintiffs. See *Collins v. McPherson,* 91 Ga. App. 347 (2) (85 SE2d 552); *Seaboard Coast Line R. Co. v. Duncan,* 123 Ga. App. 479, 481 (2) (181 SE2d 535). We note the court gave this instruction in its charge.

The trial court did not charge as to earning capacity of the child, loss of employment, abstinence from work, etc., for it is obvious such standards could not be used in calculating the amount of damages, for this case deals with the wrongful death of a child of such tender years that no earning capacity has been established or can directly be ascertained. Thus, it was not necessary to produce evidence as to earning capacity in order to recover; "but the value of the child's life must be established by the enlightened conscience of an impartial jury as applied to the evidence in the case, including testimony as to such child's age, life expectancy, precocity, health, mental and physical development, family circumstances, and from the experience and knowledge of human affairs on the part of the jury." *Collins v. McPherson,* 91 Ga. App. 347, supra at 349. This is exactly the instruction given by the court, and while the expression "value of the life . . . to herself had she lived" is not absolutely a correct statement we find no harmful error in the charge as a whole. There is no merit in these complaints.

16. The remaining enumerations of error we now consider concern defendants' arguments that the verdict was so excessive to justify the inference of gross mistake, prejudice or undue bias and must be reversed under former Code § 105-2015 (now OCGA § 51-12-12, effective November 1, 1982). Defendants contend that same was exacerbated by a defense witness' cross-examination relevant to liability insurance (already considered and reviewed above in Division 3), the jury was prejudiced by arguments by plaintiffs' counsel as to the punitive nature of damages; and the mistake in the charge by the court instructing the jury as to the measure of the damages (reviewed above in Division 15). Since we have already discussed and found no error with reference to two of the above factors, we proceed to the argument made by counsel as to the jury argument made by plaintiffs' counsel. First of all, we do not find that any objection was made to counsel's argument. When an improper argument is made to the jury, the adversary must act by interposing an objection. The failure to object amounts to a waiver of misconduct. See *Brooks v. State,* 183 Ga. 466, 468 (188 SE 711); *Woodland Hills Co. v. Coleman,* 73 Ga. App. 409, 413 (36 SE2d 826); *Saxon v. Toland,* 114 Ga. App. 805, 806 (2) (152 SE2d 702).

As to the question as to whether counsel's argument with reference to the punitive nature of the damage was incorrect we find the following discussion of the wrongful death statute in *Savannah Elec. Co. v. Bell,* 124 Ga. 663, 668 (53 SE 109). "The statute is ... one that is intended to inflict a punishment upon wrong-doers who bring about the death of a human being by negligence. Lord Campbell's act and the various statutes in this country based upon it are nothing more than a method of punishing negligence by civil action. The multiplication of fatal accidents and the practical impossibility for securing the punishment of mere carelessness by means of criminal proceedings were the causes which brought about the passage of Lord Campbell's act as well as those which have followed it . . . This is nothing more or less than a legislative imposition of a penalty upon the person who causes the death of another by negligence, the penalty to go to the person injured. While such legislation is punitive so far as the defendant is concerned, it is compensatory so far as the plaintiff is concerned; but exact compensation for the loss sustained is not the primary object of the statute, though in many cases this result may be brought about . . . The damages recovered by the plaintiff in this case are intended incidentally to compensate her for the loss she has sustained, but primarily to punish the defendant for its negligence in bringing about the death of a human being." Under the circumstances here we find no merit in this complaint. See *Ga. R. & Banking Co. v. Spinks,* 111 Ga. 571, 573 (36 SE 855); *Collins v. McPherson,* 91 Ga. App. 347, 351, supra.

In further consideration as to whether the verdict rendered was excessive we have already determined that the court's instruction as to the measure of damages did not result in any harmful error, and we have found no other error which would have caused the jury to be biased or prejudiced. The remaining argument of the defendants is that we should conclude from the amount of the award that it was excessive. Where there is no direct proof of prejudice or bias, before the appellate court can set it aside as excessive the amount thereof when considered in connection with all the facts must shake the moral senses. It must appear to be exorbitant, flagrantly outrageous and extensive; in short, it must carry its death warrant on its face. See *Realty Bond & Mtg. Co. v. Harley,* 19 Ga. App. 186 (2), 187-189 (91 SE 254); *Western & Atlantic Railroad v. Burnett,* 79 Ga. App. 530 (7), 543 (54 SE2d 357).

Defendants have attempted to undertake a review of the verdicts in other wrongful death cases involving minors to show none as reaching the size of the award here. However, this court has recognized that comparison between cases should not be made

because no two cases are precisely alike. *St. Paul Fire &c. Ins. Co. v. Dillingham,* 112 Ga. App. 422, 424 (145 SE2d 624); *Colonial Stores v. Coker,* 77 Ga. App. 227, 234 (9) (48 SE2d 150). We set out the argued cases here. In *Woods v. Andersen,* 145 Ga. App. 492, 496 (7) (243 SE2d 748) (1978), we affirmed a verdict of $155,000 for the "full value" of the life of a 6-1/2 year old child who was struck and killed by a van. In *Seaboard Coast Line R. Co. v. Duncan,* 123 Ga. App. 479 (1971), supra, this court upheld an award of $80,000 as a reasonable recovery under the circumstances for the death of the plaintiff's twelve-year-old daughter. For other holdings, see *Seaboard Coast Line R. Co. v. Wallace,* 123 Ga. App. 490, 493 (5) (181 SE2d 542) (1971) (boy riding bicycle struck by train, no age given in the holding, $50,000 verdict not excessive as a matter of law); *Henry Grady Hotel Corp. v. Watts,* 119 Ga. App. 251 (4) (167 SE2d 205) (1969) (14-year-old son, $113,000 verdict within range of evidence); *Jordan v. Fowler,* 104 Ga. App. 824 (5) (123 SE2d 334) (1961) (15-year-old son, $7,500 verdict not excessive); *Royal Crown Bottling Co. v. Bell,* 100 Ga. App. 438, 445 (8) (111 SE2d 734) (1959) (17-year-old daughter, $54,000 verdict not so excessive as to show bias or prejudice); *Collins v. McPherson,* 91 Ga. App. 347 (1954), supra (7-year-old daughter, $20,000 verdict); *Atlantic Coast Line R. Co. v. Heath,* 57 Ga. App. 763, 771 (6) (196 SE 125) (1938) (11-year-old son, $12,500 verdict not excessive); *Western & Atlantic Railroad v. Michael,* 178 Ga. 1, 6 (7) (172 SE 66) (1933) (12-year-old son, $15,708 verdict not excessive); *Seaboard Air-Line R. Co. v. Sarman,* 38 Ga. App. 637, 640 (13) (144 SE 810) (1928) (13-year-old child, $5,000 verdict not excessive); *Central of Ga. R. Co. v. Swann,* 19 Ga. App. 691 (6) (91 SE 1068) (1917) (14-year-old son, $4,000 verdict not excessive). Clearly, inflationary trends reflect the increase in awards as time goes by.

We note further, that none of the above cases was set aside as being excessive and although the verdict here is much more than that shown in the above cases, nevertheless this case comes before this court with the presumption in favor of the verdict, and this court does not have the broad discretionary powers invested in trial courts to set aside verdicts. We therefore are without power to interfere, "unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means. [Cit.]" *Kiker v. Davis,* 103 Ga. App. 289, 291 (118 SE2d 861). See also *Melton v. Bow,* 145 Ga. App. 272, 275 (4) (243 SE2d 590). We do not find that any of these factors were present.

Having examined all of the various enumerations of error of these defendants we find no reversible error.

*Judgment affirmed. Shulman, C. J., concurs. Birdsong, J.,*

*concurs in the judgment only.*

DECIDED NOVEMBER 17, 1983.

*Joseph H. Davis,* for appellant (case no. 66404).

*Del Percilla, Jr., Thomas W. Malone, Carr G. Dodson, George N. Skene, Charles M. Stapleton, L. Zack Dozier, Jr., Robert F. Higgins, Jr.,* for appellees.

*George N. Skene,* for appellant (case no. 66405).

*Thomas W. Malone, Del Percilla, Jr., Robert F. Higgins, Jr., L. Zack Dozier, Jr., Charles M. Stapleton, Joseph H. Davis, Wallace Miller III, Hendley V. Napier, Carr G. Dodson,* for appellees.

*Wallace Miller III, Robert C. Norman, Jr., Carr G. Dodson,* for appellant (case no. 66406).

*Del Percilla, Jr., Thomas W. Malone, Joseph H. Davis, George N. Skene, Charles M. Stapleton, L. Zack Dozier, Jr., Robert F. Higgins,* for appellees.

*Charles M. Stapleton,* for appellant (case no. 66407).

*Del Percilla, Jr., Thomas W. Malone, Carr G. Dodson, George N. Skene, Joseph H. Davis, L. Zack Dozier, Jr., Robert F. Higgins,* for appellees.