## 35883. FARMER v. RYDER TRUCK LINES, INC. et al.

HILL, Justice.

Harris Farmer was totally disabled in an accident while driving a truck owned by Dan Martin. Martin owned four trucks which were under an equipment lease to Hames Trucking Company. Mr. Farmer was one of three truck drivers employed by Dan Martin. Martin had no workers' compensation insurance in effect at the time of the accident.

Hames Trucking Company, headquartered in Clayton County, Georgia, is authorized to haul exempt commodities only. Under the terms of the equipment lease with Hames, Martin received 83% of the outbound shipping charge and Martin was entitled to all revenue from return loads that were trip leased to a common regulated carrier. Martin was responsible for finding return loads. Pursuant to the equipment lease, Martin was to furnish at his expense "competent, qualified, licensed and experienced" drivers who were to be the employees of Martin, but Hames reserved the right to request removal of any unqualified driver. Martin was to have exclusive control, direction, jurisdiction and supervision of the drivers, with Hames only having the authority to designate the destination of outgoing loads.

Upon delivering a load of exempt poultry to Chicago for Hames Trucking Company, Farmer went to Ryder Truck Lines, Inc., in Chicago and obtained a load of regulated commodities for a return haul to Georgia. Farmer signed a trip lease agreement as agent of the lessor (stipulated by the parties to be Martin).

Under the terms of the trip lease agreement, the

lessor (Martin) leased the tractor and trailer to Ryder under the "direction and control of Ryder Truck Lines, Inc." The tractor and trailer were under the "exclusive possession, control, and use" of Ryder, who assumed "full responsibility in respect to the equipment it is operating to the public, the shippers, and all regulatory bodies having jurisdiction." The lessor was to pay the driver's salary and indemnify Ryder against any loss resulting from the injury or death of the driver. Ryder retained authority to transfer the shipment and handle it according to its best judgment if Ryder deemed that the equipment was inadequate for any reason.

Farmer was injured while driving the tractor leased to Ryder. After the accident, Farmer filed a workers' compensation claim against Ryder and Hames Trucking Company. The administrative law judge found as a matter of fact that Ryder Truck Lines and Hames Trucking Company were Farmer's employers at the time of the accident. He found that Ryder had the right to and was legally required to maintain control over the truck and driver under the trip lease agreement and under Interstate Commerce Commission regulations. He further found that Hames Trucking Company maintained control of the truck and in so doing necessarily maintained control of the driver with respect to the outgoing trip. He held that the picking up of return loads was part and parcel of the equipment lease entered into between Hames Trucking Company and Martin. In return hauls, Martin was lowering the cost to Hames of the outbound loads by not returning empty, and thus the return haul was of monetary benefit to Hames Trucking Company. The administrative law judge found that at the time of the accident the truck was being returned to Hames and held that under the provisions of our workers' compensation laws, the employer, Hames, could not send an employee to a distant location and then deny any responsibility for his return. He awarded Harris $95 per week for the period of his incapacity.

Upon de novo review, the workers' compensation board reversed the award. The board found that Farmer had been operating the truck under the general supervision of Dan Martin. It found no employee-

employer relationship existed between Farmer and Ryder Truck Lines, Inc., or Hames Trucking Company. The board held that the proper test to be applied in determining the existence of an employee-employer relationship is "whether the alleged employer had the right to control the time, manner, and method of performance of the alleged employee's work duties, or whether the alleged employer assumed such control, regardless of whether he had the right to do so." The board found that Hames Trucking Company neither had the right to nor exercised any control over Farmer on his return trip to Georgia. The board further found that testimony of Ryder's representative clearly indicated that the language in the trip lease giving Ryder the right to control the tractor and trailer referred to results to be accomplished and was never understood to give Ryder the right to control Farmer as to the time, manner, and method of his driving to Georgia.[1] Consequently, the board reversed the administrative law judge (one director dissenting) and denied relief.

On appeal, the superior court affirmed. In a full court opinion, the Court of Appeals affirmed, with two judges dissenting. *Farmer v. Employers Ins. of Wausau,* 152 Ga. App. 608 (264 SE2d 26) (1979). The majority divided the right of control into two dimensions, "ministerial control" and "operational control." Ministerial control, reasoned the Court of Appeals, was control over the driver, and operational control was control over the equipment required by federal law and exercised by Ryder for the protection of the freight and the public. The Court of Appeals found that the driver and his expenses were paid by Martin and that Ryder could not hire or replace the driver.

One of our concerns in granting certiorari was the possible applicability of the "statutory employer" provision of our workers' compensation law, Code Ann. § 114-112, in light of *Holt v. Travelers Ins. Co.,* 244 Ga. 857

---

[1]Ryder's representative testified, inter alia, that during the trip lease, Farmer was under the direction and control of Ryder.

(244 SE2d 139) (1979). That Code section is inapplicable here for the reason that no claim for compensation was first instituted against the immediate employer, Martin, as required by that section. We are now concerned with whether the concept of ministerial and operational control should be introduced into our workers' compensation law.[2]

The name of the case has been changed from *Farmer v. Employers Insurance of Wausau, et al.,* as it was in the Court of Appeals, to *Farmer v. Ryder Truck Lines, Inc.,* to more accurately reflect the issue in the case. Employers Insurance of Wausau insured Hames Trucking Company and we affirm the judgment of the Court of Appeals insofar as it held that Hames Trucking Company was not Farmer's employer at the time of the accident.

---

[2] At common law, a master was and is liable for torts committed by his or her servant in the execution of the master's business and within the scope of the employment. 20 EGL 428, Master and Servant, § 32. A master is one who employs another to perform services and who controls or has the right to control the physical conduct of the person employed in the performance of those services. 20 EGL 356, Master and Servant, § 2.

When our workers' compensation law was enacted, we adopted from the laws governing vicarious liability the control test for determining workers' compensation coverage. 29 EGL 226, Workers' Compensation, § 18. "In determining whether or not the relationship of master and servant prevails in a compensation case, the same principles that exist under the common law obtain." *Travelers Ins. Co. v. Clark,* 58 Ga. App. 115, 121 (197 SE 650) (1938). Hence, when we define which persons are employees for workers' compensation purposes, we may at the same time be defining which persons are servants for tort liability purposes.

Thus, when Ryder accepted full responsibility to the public in respect to the equipment it was operating, it accepted at least partial responsibility for Farmer's negligent injury, if any, to a member of the motoring public. See Walter v. Dunlap, 368 F2d 118 (3rd Cir. 1966).

Regulations of the Interstate Commerce Commission require authorized carriers who lease equipment with drivers from owners to issue receipts identifying the equipment, and specifying the date and time on which the lease begins and when it ends. The lease must provide that the lessee have exclusive possession, control, and use of the equipment for the duration of the lease, and that the lessee assume complete responsibility for the operation of the equipment for the duration of the lease.[3]

It may be argued that Farmer was an independent contractor as to Ryder, in that Ryder had only the right to require certain results in conformity with the contract and that Ryder did not have the right to control the time, manner and method of executing the work. Because there was no direct contract between Ryder and Farmer, their relationship to each other must be ascertained from the trip lease agreement between Ryder and Martin.

Under the trip lease in question the tractor and trailer were under the direction and control of Ryder.[4] The driver went with the equipment. Ryder controlled the delivery of the goods. Ryder told Farmer where and when to pick up the load. Farmer was allowed to choose which of the ICC approved routes he would travel but Ryder then adopted that route and told Farmer not to deviate from it. Ryder told Farmer where and when to deliver the load. These are pertinent factors to be considered in determining whether Ryder had control over Farmer as to the return trip.

In *Ratliff v. Liberty Mutual Ins. Co.,* 149 Ga. App. 211

---

[3]See generally 49 CFR §§ 1057.11, 1057.12, formerly 49 CFR § 1057.4. Pursuant to 49 USCA § 304(e), the ICC is authorized to prescribe such regulations governing motor carriers using nonowned vehicles as necessary to assure that such carriers will have full direction and control of such vehicles and will be responsible for the operation thereof as if they were the owners.

[4]The lease involved in *Montgomery Trucking Co. v. Black,* 231 Ga. 211 (200 SE2d 882) (1973), was not subject to, or did not comply with, the ICC regulations applicable here.

(253 SE2d 799) (1979), the court found the driver of a leased tractor to be an employee of the lessee for workers' compensation purposes notwithstanding the fact that the "employer" leased the rig rather than owned it.

Ryder argues that it did not hire and could not fire Farmer. However, it could have declined to enter into this trip lease with Farmer as driver, and it could terminate the haul by transferring the shipment if it deemed the equipment to be inadequate for any reason. It is true that it was Martin who actually hired, paid and could fire Farmer. Ryder on the other hand could effectively do much the same thing and it controlled the details of the loading, the route and the unloading of the shipment even to the exclusion of Martin.

"Under general legal principles, it is well settled that the fact that an employee is the general servant of one employer does not prevent him from becoming the particular servant of another under special circumstances, and it is true, as a general proposition, that when one person lends or hires his servant to another for a particular employment, the servant, as to anything done in such employment, must be dealt with as the servant of the person to whom he is lent or hired, although he remains the general servant of the other person. In actions at common law, to recover damages alleged to have been caused by the servant of the defendant, the criterion by which to determine whether the relation existed as alleged is to ascertain whether, at the time of the injury, the alleged servant was subject to the defendant's orders and control and was liable to be discharged by him for disobedience to orders or for misconduct. [Cits.] The same rules have been held to be applicable in determining the existence or non-existence of the relation of employer and employee in cases arising under compensation acts." *U. S. Fidelity &c. Co. v. Stapleton,* 37 Ga. App. 707, 710 (141 SE 506) (1928). The *Stapleton* case, supra, involved the driver of a truck leased to a construction company. There it was held that the construction company was the employer of the borrowed servant for workers' compensation purposes notwithstanding the fact that the driver's wages were not paid to him directly from the construction company.

Ryder argues that the better reasoned view is expressed in Tretter v. Dart Transit Co., 271 Minn. 131, (135 NW2d 484) (1965). There the owner leased his tractor to be driven by himself to a certified common carrier pursuant to a one year lease containing control provisions similar to the trip lease involved here. The driver died in an accident and the Minnesota Supreme Court denied his widow's claim for workers' compensation. The fact that the driver was the lessor-owner of the tractor makes that case different from this one insofar as the loaned servant doctrine is concerned. Moreover, the Minnesota court acknowledged that the ICC regulations, as drawn, do not mandate that a driver of a leased vehicle be, or negate that the driver is, the employee of the lessee.

The decision of the United States Supreme Court on which the Court of Appeals relied for the distinction between ministerial and operational control, Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., 423 U. S. 28 (96 SC 229, 46 LE2d 169) (1975), involved the validity of an indemnification provision in a trip lease, in view of the ICC regulations and as against a public policy challenge, whereby the lessor agreed to indemnify the lessee for claims arising out of the lessor's negligence. The Supreme Court upheld the validity of the indemnification provision. In passing, the court observed that the lessor's furnishing of the driver allows "an aspect of control, in a sense, to remain in the lessor" (423 U. S. at 39). The court described the lessor's control over the driver as ministerial and the lessee's control as "operating authority" and "that *ultimate control* in the lessee that makes and keeps it responsible to the public, the shipper, and the Commission" (423 U. S. at 39). (Emphasis supplied.) Thus, the Supreme Court considered the lessee's control to predominate over the lessor's.

In White v. Excalibur Ins. Co., 599 F2d 50 (5th Cir. 1979), Crawford leased his trucks with drivers to Superior Trucking Co., an ICC motor carrier. One of these drivers was killed. His mother sued Superior in tort and then sued Superior's insurance company on the judgment in district court. The circuit court held that the deceased was an

employee of Superior within the meaning of 49 USC § 304(e), supra, and that as the employer, Superior was immune to suit in tort but was subject to Georgia's Workers' Compensation Act. Construing federal law, the court said (599 F2d at 54): "Because Congress has created the statutory employee status, and, as we have concluded, the carrier-lessee is deemed an 'employer' for purposes of the Georgia Workmen's Compensation Law, the Georgia cases dealing with independent contractors are not applicable."

We find that the Court of Appeals erred insofar as Ryder Truck Lines, Inc., is concerned in dividing control into two parts for workers' compensation purposes. We find further that the workers' compensation board erred in failing to recognize the right of control given Ryder in the trip lease, as opposed to the testimony of Ryder's representative interpreting that lease contrary to its terms.

On the other hand, the terms of the equipment lease between Martin and Hames Trucking Company clearly show that Hames Trucking Company exercised no control over Martin's drivers regarding return hauls of regulated commodities and Hames Trucking Company thus was not an employer of Farmer at the time of the accident.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Jordan, P. J., who concurs in the judgment only.*

ARGUED MARCH 10, 1980 — DECIDED APRIL 22, 1980 —
REHEARING DENIED MAY 7, 1980.

*Edward E. Strain, III,* for appellant.
*Andrew J. Hamilton, George L. Pope, Jr.,* for appellees.