**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: May 13, 2025

S24G0842.  STATHAM v. QUANG et al.

COLVIN, Justice.

We granted certiorari in this case to determine whether physicians who supervised a medical student during a surgery could be held vicariously liable for any negligent acts or omissions that the medical student may have committed during the procedure, under OCGA § 51-1-38, general agency principles, or the borrowed servant doctrine. The trial court granted partial summary judgment to the defendants, summarily concluding that they could not be held vicariously liable for the medical student's negligence. And a divided panel of the Court of Appeals affirmed, with the lead opinion, which was not joined by either of the other two judges on the panel, concluding that OCGA § 51-1-38 did not impose vicarious liability on the defendant physicians, and that, based on the evidence

presented on summary judgment, the defendant physicians could not be held vicariously liable under general agency principles or the borrowed servant doctrine. See *Statham v. Quang*, 371 Ga. App. 55, 59-61 (a)-(c) (899 SE2d 275) (2024).

As we explain below, we agree with the Court of Appeals' lead opinion that OCGA § 51-1-38 (a statute that immunizes medical students from civil liability under certain circumstances) did not provide a basis for holding the defendant physicians vicariously liable. We also agree with the lead opinion's ultimate conclusion that the defendant physicians could not be held vicariously liable under the borrowed servant doctrine, albeit for different reasons than those expressed in the Court of Appeals' lead opinion. As we explain below, the defendant physicians could not be held vicariously liable under the borrowed servant doctrine because that doctrine operates as a defense to a claim of vicarious liability under the doctrine of respondeat superior, not as an independent basis for imposing vicarious liability on a defendant. But we disagree with the lead opinion's conclusion that, as a matter of law, the defendant

2

physicians could not be held vicariously liable for the medical student's negligence under general agency principles. As explained below, under the doctrine of respondeat superior, a general principle of agency law, a physician can be vicariously liable for the negligent acts or omission of a medical student under his supervision if the evidence shows that, when the injury occurred, the medical student was acting as the physician's "servant" in furtherance of the physician's goals and within the scope of the physician's business. And because genuine issues of material fact remain regarding whether the defendant physicians were vicariously liable under the doctrine of respondeat superior for any negligence committed by the medical student, we reverse the Court of Appeals' judgment affirming the trial court's grant of partial summary judgment to the defendants on the issue of vicarious liability.

1. After Plaintiff Jacqueline Statham suffered injuries during a hysterectomy, she sued the physician who performed the surgery (David S. Quang, D.O.), the physician who assisted in the surgery (Tan-Loc Nguyen, M.D.), and the defendant physicians' medical

3

practice (Women's Healthcare of Middle Georgia, P.C.) (collectively, "Defendants"). In her second amended complaint, Plaintiff alleged that the negligence of a medical student, who assisted in Plaintiff's surgery by manipulating a sponge stick under the supervision of the defendant physicians, resulted in the defendant physicians improperly cutting her rectal wall. And according to Plaintiff, that injury later developed into a "rectovaginal fistula" that caused fecal matter to enter her vagina and required further medical intervention. Based on these allegations, Plaintiff asserted claims against Defendants for professional negligence, negligent supervision of the medical student, and vicarious liability for any negligence committed by the medical student.

The parties filed cross-motions for partial summary judgment on the issue of vicarious liability. Plaintiff argued that, under general principles of agency law and the borrowed servant doctrine, the defendant physicians were vicariously liable for any negligence committed by the medical student. And Defendants argued that they could not be held vicariously liable under general agency

principles, the borrowed servant doctrine, or OCGA § 51-1-38.[1]

On summary judgment, the following facts were undisputed. On August 12, 2019, Dr. Quang performed "a total laparoscopic hysterectomy with left salpingo-oophorectomy" on Plaintiff. During the procedure, Dr. Nguyen assisted Dr. Quang. And a medical student, who was a student at Philadelphia College of Osteopathic Medicine ("PCOM"), assisted the defendant physicians. The medical student's role in the procedure was to insert a sponge stick into Plaintiff's vagina as directed by Dr. Quang and to maneuver the sponge stick as directed by the defendant physicians in order to lift Plaintiff's bladder up, help the defendant physicians visualize Plaintiff's anatomy, and help guide Dr. Quang to the appropriate location for incision. The defendant physicians visually confirmed that the medical student had initially inserted the sponge stick into Plaintiff's vagina. But at some point during the procedure, the medical student removed the sponge stick from Plaintiff's vagina

---

[1] Defendants also moved for summary judgment on Plaintiff's claim for negligent supervision. The trial court denied that motion, and the negligent supervision claim is not at issue on appeal.

and placed it in Plaintiff's rectum, which made Plaintiff's injury "more likely."

The evidence submitted on summary judgment also included a written contract (the "Agreement") between the medical student's school, PCOM (the "School"), and the defendant physician's medical practice, Women's Healthcare of Georgia (the "Host Agency"). Under the Agreement, the Host Agency agreed to provide "hands on" "clerkship[s]" for the School's third- and fourth-year medical students in exchange for the School paying the Host Agency $4,000 for each fully completed "clerkship." The Agreement provided that the Host Agency would provide students "access to patients at Host Agency facilities in an appropriately supervised environment," that the School would "advise students that they [were] required to comply with Host Agency rules, regulations, and procedures," that the Host Agency would "retain full authority and responsibility for patient care and quality standards," and that students were prohibited from "render[ing] unsupervised patient care and/or services."

6

The Agreement further provided that the Host Agency had the authority to terminate a student's participation in a patient's procedure, stating that "[t]he Host Agency will resolve any situation in favor of its patients' welfare and restrict a student to the role of observer when a problem may exist until the incident can be resolved by the staff in charge of the student or the student is removed," and that the "Host Agency may immediately remove [the student] from the premises." And the Agreement provided that both the School and the Host Agency reserved rights to terminate a student's participation in the clerkship program, stating that the "Host Agency . . . retains the right to suspend or terminate any student's participation at the Host Agency," and that "[t]he School may terminate a student's participation when, in its sole discretion, it determines that further participation by the student would no longer be appropriate."

Under a section titled "Employment Disclaimer," the Agreement stated:

The students participating in the program will not be

considered employees or agents of the Host Agency or School for any purpose. Students will not be entitled to receive any compensation from Host Agency or School or any benefits of employment from Host Agency or School, including but not limited to, health care or workers' compensation benefits, vacation, sick time, or any other benefit of employment, direct or indirect. Host Agency will not be required to purchase any form of insurance for the benefit or protection of any student of the School.

A section of the Agreement titled "No Agency Relationship Between the Parties" stated that "[n]othing in this Agreement is intended to or shall be construed to constitute or establish an agency . . . relationship between the parties." And with respect to third parties, the Agreement stated that "neither party intends for this Agreement to alter in any way its respective legal rights or its legal obligations to any third party."

The trial court summarily denied Plaintiff's motion for partial summary judgment on the issue of vicarious liability and granted Defendants' cross-motion for partial summary judgment on that issue, stating only that "as a matter of law [Defendants] are not vicariously liable for any acts or omissions of the medical student." The Court of Appeals affirmed the trial court's ruling. See *Statham*,

8

371 Ga. App. at 62. But it did so without a majority opinion, as the lead opinion was not joined by either of the other two judges on the panel, one of whom concurred in the judgment only, and the other of whom concurred in part on different grounds and dissented in part. See id. (Markle, J, authoring the lead opinion, Brown, J, concurring in judgment only, McFadden, PJ, concurring in part on different grounds and dissenting in part).

We granted certiorari to determine whether the Court of Appeals erred in concluding on summary judgment that, as a matter of law, Defendants could not be held vicariously liable for any negligent acts or omissions that the medical student may have committed. And at oral argument, Plaintiff clarified that she challenges only the trial court's grant of partial summary judgment to Defendants on the issue of vicarious liability, not the trial court's denial of her own motion for partial summary judgment on that issue. Accordingly, we limit the scope of our review to the grant of partial summary judgment to Defendants and do not address whether the Court of Appeals and trial court erred in denying

9

Plaintiff's corresponding cross-motion for partial summary judgment.

2. To prevail on a motion for summary judgment, the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). In assessing whether a genuine issue of material fact exists, a court must view the evidence presented on summary judgment "in the light most favorable to the nonmoving party." *Jones v. City of Atlanta*, 320 Ga. 239, 249 (III) (908 SE2d 519) (2024) (citation and punctuation omitted). We review summary judgment rulings de novo. See id.

Here, the Court of Appeals' lead opinion concluded that Defendants were entitled to partial summary judgment to the extent that Plaintiff sought to impose vicarious liability on them under OCGA § 51-1-38, general agency principles, or the borrowed servant doctrine. See *Statham*, 371 Ga. App. at 59-61 (a)-(c). We consider each of these rulings in turn.

(a) We begin by addressing the Court of Appeals' interpretation

10

of OCGA § 51-1-38, which provides:

> (a) No student who participates in the provision of medical care or medical treatment under the supervision of a medical facility, academic institution, or doctor of medicine, as a part of an academic curriculum leading to the award of a medical degree, shall be liable for any civil damages as a result of any act or omission in such participation, except for willful or wanton misconduct.
>
> (b) Subsection (a) of this Code section shall not be construed to affect or limit the liability of a medical facility, academic institution, or doctor of medicine.

OCGA § 51-1-38 (a), (b). Based on the plain language of the statute, the Court of Appeals' lead opinion concluded that subsection (b) of the statute "clearly does not impose vicarious liability on the surgeons for the student's alleged negligence." *Statham*, 371 Ga. App. at 61 (c). We agree.

When interpreting a statute, we "examine the statute's plain language" and read that language "in its most natural and reasonable way, as an ordinary speaker of the English language would." *Smith v. State*, __ Ga. __, __ (3) (a) (903 SE2d 878) (2024) (citation and punctuation omitted). "In doing so, we presume that the General Assembly meant what it said and said what it meant,

11

and we view the statutory text in the context in which it appears." Id. (citation and punctuation omitted). "When . . . statutory text is clear and unambiguous, our interpretive task begins and ends with the text itself." *State v. Arroyo*, 315 Ga. 582, 584 (883 SE2d 781) (2023).

Here, the clear and unambiguous text of OCGA § 51-1-38 neither imposes vicarious liability on physicians for the conduct of medical students under their supervision, nor renders physicians immune from vicarious liability for medical students' conduct. The plain language of subsection (a) — which states that "[n]o student . . . shall be liable for any civil damages" resulting from certain acts or omissions committed while "participat[ing] in the provision of medical care or medical treatment" — exempts medical students from civil liability when they provide medical care under the particular circumstances set out in the statute. OCGA § 51-1-38 (a). And the plain language of subsection (b) — which states that "[s]ubsection (a) . . . shall not be construed to affect or limit the liability of a medical facility, academic institution, or doctor of

medicine" — simply states that the exemption from liability for medical students in subsection (a) has no impact on the liability of a medical facility, academic institution, or physician who supervises a medical student when providing medical care. OCGA § 51-1-38 (b). Thus, while the statute exempts medical students from liability for their own acts or omissions under certain circumstances, the statute provides that supervising physicians remain liable as otherwise provided by law. See *Gilbert v. Richardson*, 264 Ga. 744, 753-754 (7) (452 SE2d 476) (1994) ("Under the doctrine of respondeat superior, a principal has no defense based on an agent's immunity from civil liability for an act committed in the course of employment.").

(b) We now turn to whether Georgia law provides another basis for holding a physician who supervises a medical student during a medical procedure vicariously liable for the medical student's negligence. In this case, Plaintiff claimed that the defendant physicians were vicariously liable for the medical student's negligence under two related doctrines — the doctrine of respondeat superior and the borrowed servant doctrine. We therefore briefly

13

describe the nature and operation of these doctrines before addressing the Court of Appeals' application of the doctrines to the evidence presented on summary judgment.

(i) (A) Georgia law has long recognized "[t]he common-law doctrine of respondeat superior, which is also known as the 'master-servant' rule." *Prodigies Child Care Mgmt., LLC v. Cotton*, 317 Ga. 371, 376 (2) (a) (893 SE2d 640) (2023); OCGA § 51-2-2 ("Every person shall be liable for torts committed by . . . his servant by his command or in the prosecution and within the scope of his business . . . ."). As we have explained, the doctrine of respondeat superior allows a plaintiff to "hold a principal [vicariously] responsible for the negligent conduct of an agent committed in furtherance of the principal's goals and within the scope of the principal's business." *Doe v. Saint Joseph's Cath. Church*, 313 Ga. 558, 565 (2) (b) (870 SE2d 365) (2022). But an agent's negligence can be imputed to a principal under the doctrine of respondeat superior only if the agent qualifies as a "servant" of the principal, as opposed to, for example, an "independent contractor." Compare OCGA § 51-2-2 (making a

14

principal liable for the torts of his "servant"), with OCGA § 51-2-4 (providing that a principal "generally is not responsible for torts committed by his employee when the employee exercises an independent business"), and *Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 91 (1) (327 SE2d 188) (1985) ("OCGA § 51-2-4 is a codification of the original common law rule of the nonliability of an employer for the torts of an independent contractor.").

Under Georgia law, a master-servant relationship exists only where a principal has a significant degree of control over how an agent performs his work, see *Farmer v. Ryder Truck Lines, Inc.*, 245 Ga. 734, 737-738 & n.2 (266 SE2d 922) (1980), because the principal's control over his agent's work serves as a primary justification for holding the principal liable not just for his own conduct but for that of his agent, see *Peachtree-Cain*, 254 Ga. at 91 (1) (noting that "the proper party to be charged with the responsibility for preventing the risk, and administering and distributing it," is the person who has the "right of control over the manner in which the work is to be done"). And whether a master-

servant relationship exists is generally a factual question for the jury to decide based on all the relevant evidence. See *Ambling Mgmt. Co., LLC v. Miller*, 295 Ga. 758, 762-763 (2) (764 SE2d 127) (2014) (noting that "whether a [person] is acting in the capacity as a servant . . . is generally a question for the jury based on all evidence provided"); *Farmer*, 245 Ga. at 738-739 (noting that several "pertinent factors" may be relevant in determining whether an agent is a servant).

A principal has a sufficient degree of control over an agent to establish a master-servant relationship if the principal either "controls or has the right to control the physical conduct of the person employed in the performance of th[e] services." *Farmer*, 245 Ga. at 737 n.2. And determining whether the principal had that degree of control over an agent when the injury occurred generally requires consideration of whether the principal assumed control over, or had the right to control, "the time, manner, and method of executing the work." Id. at 738 (distinguishing "the right to control the time, manner and method of executing the work," which

16

describes a master-servant relationship, from the mere "right to require certain results"); *RBF Holding Co. v. Williamson*, 260 Ga. 526, 526 (397 SE2d 440) (1990) (noting that determining whether a person is a servant turns on whether the employer had "the right to direct the time, the manner, the methods, and the means of the execution of the work" (citation and punctuation omitted)).[2]

(B) "There are instances, under Georgia law, where one may be the servant of two masters." *Hoffman v. Wells*, 260 Ga. 588, 590 (2) n.2 (397 SE2d 696) (1990). See *U. S. Fid. & Guar. Co. v. Forrester*, 230 Ga. 182, 184-185 (196 SE2d 133) (1973) ("Ordinarily, one is not the servant of two masters, but the courts of this State have recognized the principle that one may be the servant of two masters and subject to the demands of both or either." (citation and punctuation omitted)). And when it is necessary to determine

---

[2] See also OCGA § 51-2-4 (providing that an employer may be held responsible for torts committed by a person who would ordinarily be classified as an independent contractor if the person, like a servant, is "subject to the immediate direction and control of the employer"); OCGA § 51-2-5 (5) ("An employer is liable for the negligence of [an independent] contractor . . . [i]f the employer retains the right to *direct or control the time and manner* of executing the work or interferes and assumes control so as *to create the relation of master and servant . . . .*" (emphasis supplied)).

17

whether an agent was acting as a servant of one master or another on a particular occasion — a situation that often arises "in the context of the tort doctrine of respondeat superior," as well as when determining whether an agent qualifies as an "'employee' for purposes of the workers' compensation statute" — we have relied on what is referred to as the "borrowed servant rule" or the "borrowed servant doctrine." *Summerlin v. Georgia Pines Cmty. Serv. Bd.*, 286 Ga. 593, 596 (2) (690 SE2d 401) (2010).

In the respondeat superior context, where "vicarious liability for the acts of servants depends upon the master's right of control over the acts of the servants," the borrowed servant doctrine addresses the fact that a servant may have more than one master as a result of being loaned from one employer to another, but that both masters rarely "have control over the actions of the [servant] at the same time." *Hoffman*, 260 Ga. at 589-590 (2). As we have explained, the "borrowed servant" doctrine is a "widely recognized exception to the doctrine of respondeat superior," under which a master (often referred to as a "general master") who "lends his servants to

18

another" master (often referred to as a "special master") "is not responsible for any negligence of the servant committed within the scope of his employment by the other." *Hoffman*, 260 Ga. at 589 (2). See also *Summerlin*, 286 Ga. at 596 (2) (noting that we had held that the "borrowed servant rule is [an] exception to [the] tort doctrine of respondeat superior"); *Six Flags Over Georgia, Inc. v. Hill*, 247 Ga. 375, 377 (1) (276 SE2d 572) (1981) (referring to an employer who lends an employee to another as the "general master," and referring to an employer who borrows the employee as the "special master" (citation and punctuation omitted)).

We have explained that, as a general matter, a general master's agent should be considered a "borrowed servant" of a special master if, on the occasion when an injury occurred, (1) "the special master had complete control and direction of the servant for the occasion," (2) "the general master had no such control," and (3) "the special master had the exclusive right to discharge the servant." *Tim's Crane & Rigging, Inc. v. Gibson*, 278 Ga. 796, 797-798 (604 SE2d 763) (2004) (quoting *Six Flags Over Georgia*, 247 Ga. at 377

19

(1)). See *Six Flags Over Georgia*, 247 Ga. at 377 (1) (explaining that courts must focus on the specific "occasion when the injury occurred" in assessing whether the borrowed servant doctrine's requirements are satisfied). And we have established specific rules for applying the borrowed servant doctrine in cases where a hospital seeks to avoid vicarious liability for the negligence of a hospital employee working under a physician's supervision. See *Ross v. Chatham County Hosp. Auth.*, 258 Ga. 234, 235 (1) (367 SE2d 793) (1988) (explaining that a "hospital which seeks to escape liability must show that" (1) "it has yielded control of its employees who are assisting in a surgical procedure," (2) "the employees whose negligence the hospital seeks to impute to the surgeon are under the immediate supervision of the surgeon," and (3) the task which the employee allegedly performed in an allegedly negligent manner was one "involving professional skill and judgment," as opposed to a "clerical or administrative task[] not requiring the exercise of medical judgment" (citation and punctuation omitted)).

(ii) As applied to this case, the above legal principles establish

20

two conditions that must be satisfied in order for Plaintiff to hold the defendant physicians vicariously liable under the doctrine of respondeat superior for any negligence committed by the medical student. First, Plaintiff must show that, when the injury occurred, the medical student was acting "in furtherance of the [defendant physicians'] goals and within the scope of the [their] business." *Saint Joseph's Cath. Church*, 313 Ga. at 565 (2) (b). See also *Quynn v. Hulsey*, 310 Ga. 473, 474 n.2 (850 SE2d 725) (2020) ("[T]he test to determine if the master is liable [under the doctrine of respondeat superior] is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master." (citation and punctuation omitted)). Second, Plaintiff must show that, when the injury occurred, the medical student was acting in her capacity as a "servant" of the defendant physicians by establishing that the defendant physicians either "ha[d] the right to control the [medical student's] physical conduct" in executing the work or assumed "control[ ]" over the medical student's "physical conduct" in executing the work. *Farmer*, 245 Ga. at 737 n.2. And in

21

assessing the defendant physicians' degree of control over the medical student, "pertinent factors" include whether the defendant physicians controlled or had the right to control "the time, manner, and method of executing the work." Id. at 738.

On summary judgment, Defendants did not dispute that the evidence, when viewed in the light most favorable to Plaintiff, showed that the first condition was satisfied — that the medical student was assisting the defendant physicians in achieving their surgical goals within the scope of their business. Defendants argued only that there was no genuine issue of material fact as to the second condition — whether a master-servant relationship existed between Defendants and the medical student. And they contended that the Agreement between the medical school and the defendant medical practice established as a matter of law that the medical student was not an agent of Defendants.

In reviewing the trial court's grant of partial summary judgment to Defendants on the issue of vicarious liability, the Court of Appeals' lead opinion likewise focused on the second condition for

22

establishing vicarious liability under the doctrine of respondeat superior. See *Statham*, 371 Ga. App. at 59-60 (a). Specifically, the lead opinion asserted that "Georgia law is clear that[,] when considering the relationship between parties, a written contract controls the terms and scope of that relationship," and, "where the contract establishes the responsibility of the parties[,] it also establishes whether the borrowed servant doctrine or other agency principles apply." Id. at 59 (a). And the lead opinion concluded that "the clear and unambiguous terms" of the Agreement between the medical student's school and the defendant medical practice established that there was no agency relationship between the medical student and the defendant physicians because (1) the Agreement "specified that the medical student was not considered an employee or agent of the practice," (2) the Agreement stated that it did not "create any agency, employer/employee, or fiduciary relationship between the parties," (3) "[n]o compensation or employment benefits from the practice were conferred on the medical student" under the Agreement, and (4) the Agreement

23

vested both the medical school and the medical practice "with the right to terminate the student's participation in the program." Id. at 59-60 (a).

The lead opinion was correct to consider the contract insofar as it addressed the defendant physicians' right to control the medical student's conduct during Plaintiff's procedure. It has long been the law of Georgia that a contract can give rise to a right of control over an agent that can serve as an independent basis for concluding that an agent was a principal's servant, even when the principal did not in fact assume control over the agent. See *Golosh v. Cherokee Cab Co.*, 226 Ga. 636, 637-638 (176 SE2d 925) (1970) ("The test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or employer and independent contractor, lies in whether *the contract gives, or the employer assumes, the right to control* the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." (quoting *Fid. & Cas. Co. of New York v. Windham*, 209

24

Ga. 592, 593 (74 SE2d 835) (1953)) (emphasis supplied); *Macon News Printing Co. v. Hampton*, 192 Ga. 623, 624-625 (15 SE2d 793) (1941) (noting that determining whether an agent is a servant turns on "*whether the contract gives, or the employer assumes, the right to control* the time, manner, and method of executing the work" (citation and punctuation omitted; emphasis supplied)). We have also stated that a "contract between . . . parties is controlling as to their responsibilities thereunder." *Tim's Crane & Rigging*, 278 Ga. at 798 (quoting *Montgomery Trucking Co. v. Black*, 231 Ga. 211, 213 (200 SE2d 882) (1973)). As a result, in cases where there is no contention that a party in fact assumed control over an agent and a contract speaks to which party had a right to control the agent, a contract's terms could be dispositive in determining whether a party had the right to control the agent's conduct. See id. (holding that, because "the contract between [a general master] and [a special master] explicitly set[ ] forth each requirement of the borrowed servant doctrine" and allocated the "risk" between the general master and the special master as to the "responsibility for the

25

negligence of [a] servant," "[w]hether or not [the special master] ever assumed any control or supervision of [an agent, the special master] acquired the right to do so," and thus the general master was not liable for "any negligence of [the agent]" (citation and punctuation omitted)); *Blair v. Smith*, 201 Ga. 747, 748 (41 SE2d 133) (1947) (treating a contract as dispositive of whether a principal had a right to control an agent because the plaintiff conceded that the principal "did not assume control of the work specified in his contract with [the agent]"), overruled on other grounds by *Wright Assocs., Inc. v. Rieder*, 247 Ga. 496 (277 SE2d 41) (1981). And determining whether a contract gives rise to a master-servant relationship requires careful consideration of whether the contract grants a principal a right of control that is sufficient to create such a relationship under the legal standards set out above, not merely on whether the contract says there is or is not such a relationship. See, e.g., *Blair*, 201 Ga. at 749-751 (analyzing whether a contract granted a principal the "right to control the time, method, and manner of executing the work").

But here the Court of Appeals misapplied the law in focusing exclusively on the contract presented on summary judgment and treating it as dispositive of whether the defendant physicians could be held vicariously liable under the doctrine of respondeat superior. This is because, as explained above, a master-servant relationship can exist where a principal either has a right to control an agent's conduct *or* assumes control over the agent's conduct. While the contract may have been relevant in determining whether the defendant physicians had a right to control the medical student, Plaintiff's respondeat superior claim was not primarily based on the defendant physicians' right of control but instead on their assumption of control over the medical student. And because the defendant physicians could have assumed control over the medical student even if they did not have a contractual right to do so, the Court of Appeals' lead opinion erred in treating the contract terms as dispositive of whether the defendant physicians could be held vicariously liable.

Here, setting aside whether the defendant physicians had a

27

contractual right to control the medical student and whether the Agreement provided any support for an inference that the defendant physicians assumed control over the medical student, the undisputed evidence, when considered in the light most favorable to Plaintiff, created a genuine dispute of material fact as to whether the defendant physicians assumed control over the medical student's physical conduct during Plaintiff's surgery. Specifically, the undisputed evidence showed that the defendant physicians instructed the medical student to insert the sponge stick into Plaintiff's vagina, visually confirmed that the medical student's initial insertion was proper, and directed the medical student to manipulate the sponge stick as necessary during the surgery. Because a plaintiff need only show a sufficient group of "pertinent factors" to establish the existence of a master-servant relationship, *Farmer*, 245 Ga. at 738, and because this undisputed evidence could support a finding that the defendant physicians assumed control over the manner and method of the medical student's work, whether the medical student was acting as the defendant physician's servant

during Plaintiff's procedure is a jury question that cannot be decided as a matter of law on summary judgment, see *Ambling Mgmt.*, 295 Ga. at 762-763 (2).[3] Accordingly, the Court of Appeals erred in affirming the trial court's grant of partial summary judgment to Defendants on the issue of vicarious liability.[4]

---

[3] In analyzing the evidence presented on summary judgment, the Court of Appeals' lead opinion emphasized that the defendant practice did not pay the medical student for her labor. See *Statham*, 371 Ga. App. at 59-60 (a) ("No compensation or employment benefits from the practice were conferred on the medical student[.]"). To the extent that the lead opinion treated that fact as dispositive, it erred because payment is not a prerequisite to establishing a master-servant relationship. See *Fid. & Cas. Co. of New York*, 209 Ga. at 594 (noting that "[p]ayment of wages . . . [is] not necessary to render one a master" (citation and punctuation omitted)). See also *Hoffman*, 260 Ga. at 590 (2) (holding that a nurse in an operating room was a servant of the doctor, rather than of the hospital, even though the nurse was employed and paid by the hospital, rather than by the doctor).

[4] Although "[c]ontractual interpretation is generally a matter of law to be decided by the court," *Knott v. Knott*, 277 Ga. 380, 381 (2) (589 SE2d 99) (2003), we need not decide here whether the Court of Appeals' lead opinion correctly interpreted the Agreement because, as described above, the undisputed evidence was sufficient to create a genuine dispute of material fact as to whether Defendants can be held vicariously liable for any negligence on the part of the medical student under the doctrine of respondeat superior. To the extent that the trial court needs to interpret the Agreement in future proceedings, we remind the court that it is not bound by the interpretation set out in the Court of Appeals' lead opinion, which was not joined by a second judge on the panel, and that, when interpreting the contract, the court should carefully consider the specific language of the Agreement in the context of the Agreement as a whole. See *Langley v. MP Spring Lake, LLC*, 307 Ga. 321, 324 (834 SE2d 800) (2019) ("[I]t is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another." (citation and punctuation omitted)).

(iii) As noted in Division 2 (b) (i) above, we have set out both general requirements for applying the borrowed servant doctrine to relieve a general master of vicarious liability for torts committed by his servant, as well as specific requirements for applying the doctrine to relieve a hospital of vicarious liability for torts committed by hospital employees supervised by surgeons. The Court of Appeals' lead opinion concluded that "the borrowed servant doctrine d[id] not apply" to "make the surgeons vicariously liable" for the medical student's negligence because the evidence presented on summary judgment could not support a jury finding that Plaintiff had satisfied either set of requirements. *Statham*, 371 Ga. App. at 60 (b) (concluding that the evidence did not support a finding that the surgeons had "the exclusive right to terminate the medical student" or that the medical student's participation in the surgery "require[d] a level of professional skill or judgment" (punctuation and emphasis omitted)).[5] Although we agree with the lead opinion's conclusion —

---

[5] The lead opinion also noted that the medical student was not an employee of the medical school, and thus that "there was no employment

that Defendants could not be held vicariously liable under the borrowed servant doctrine — we reach that conclusion for a different reason.

As our description of the borrowed servant doctrine in Division 2 (b) (i) above reveals, in the context of vicarious liability, Georgia law recognizes the doctrine as a *defense* to a respondeat superior claim: the borrowed servant doctrine is an "*exception* to the doctrine of respondeat superior" that relieves a general master of vicarious liability if a special master had the "right of control over the acts of the servant[ ]" when the injury occurred. *Hoffman*, 260 Ga. at 589 (2) (emphasis supplied). See also, e.g., *Ross*, 258 Ga. at 234 (defendant moved for summary judgment, arguing it was "release[d] from liability under the 'borrowed servant' rule" because the employee was acting as a servant of a special master when the injury occurred); *Brown v. Smith*, 86 Ga. 274, 277 (12 SE 411) (1890) (affirming a trial court's determination that the plaintiff could not

relationship between the parties for the borrowed servant doctrine to apply here." *Statham*, 371 Ga. App. at 60 (b).

recover from a general master for the negligence of a servant because, when the injury occurred, a special master "had as ample and complete control over the [servant] as if [the special master] had originally hired [the servant]"). The parties have not cited, and we have not discovered, any case in which we have recognized the borrowed servant doctrine as an independent basis for establishing a defendant's vicarious liability for a servant's acts or omissions.[6]

---

[6] In *Tim's Crane & Rigging*, a bailor's employee performed negligently while working for a bailee, and we considered whether the bailor could be held vicariously liable for his employee's negligence under OCGA § 44-12-62 (b), which provides:

> If the bailor sends his own agents with the thing bailed, the hirer shall not be liable for the acts of such agents but shall only be liable either to the bailor or to third persons for the consequences of his *own directions* and for gross neglect.

*Tim's Crane & Rigging*, 278 Ga. at 796-797 (quoting OCGA § 44-12-62 (b); emphasis supplied). We stated that the statute's "reference to the hirer's 'own directions' . . . refers to the borrowed servant doctrine." Id. at 797. And we held that the bailor was entitled to summary judgment because the evidence established that the bailee had acquired a right to control the employee under a contract that set out each requirement of the borrowed servant doctrine. See id. at 797-798.

Although *Tim's Crane & Rigging* addressed only whether the bailor had a defense to a claim of vicarious liability under OCGA § 44-12-62, the Court of Appeals appears to have interpreted *Tim's Crane & Rigging* as establishing requirements for a plaintiff to recover from a bailee under the statute. See *Coe v. Carroll & Carroll, Inc.*, 308 Ga. App. 777, 779-782 (1) (709 SE2d 324) (2011) (considering evidence relevant to the borrowed servant doctrine's requirements in assessing whether a bailee could be held liable under OCGA § 44-12-62). We

Instead, as explained above, whether a plaintiff can hold a master vicariously liable for a servant's acts or omissions has traditionally rested on the doctrine of respondeat superior. And consistent with that traditional understanding of vicarious liability, we have identified the doctrine of respondeat superior, rather than the borrowed servant doctrine, as the basis for holding a special master vicariously liable for the acts or omissions of borrowed servants, who, as the phrase "borrowed servant" implies, are servants of the special master. See *Ross*, 258 Ga. at 234, 235 (1) (explaining that "the borrowed servant rule" allows a general master "to escape liability," and that "the negligence of [a borrowed servant is imputed] to the [special master] *under the rule of respondeat superior*" (emphasis supplied)). See also *Summerlin*, 286 Ga. at 594-

need not decide here whether the Court of Appeals correctly interpreted *Tim's Crane & Rigging* because this is not a bailment case proceeding under OCGA § 44-12-62. For our purposes, it is enough to note that even if *Tim's Crane & Rigging* is properly interpreted as incorporating the borrowed servant doctrine's requirements into OCGA § 44-12-62 as the requirements for establishing a bailee's vicarious liability under that particular statute, it did so only in the context of that statute and did not recognize the borrowed servant doctrine as an independent basis for imposing vicarious liability on a special master.

596 (2) (explaining that borrowed servants are servants under Georgia law).[7] In other words, a plaintiff who seeks to hold a special master vicariously liable for a borrowed servant's conduct cannot rely on the borrowed servant doctrine but instead must establish the elements of a respondeat superior claim — that, when the injury occurred, the borrowed servant was acting as the special master's "servant" in furtherance of the special master's goals and within the

---

[7] The parties cite *Hendley v. Evans*, 319 Ga. App. 310 (734 SE2d 548) (2012), a case in which the Court of Appeals purported to reject an argument that "the borrowed servant doctrine may only be used defensively by a party seeking to transfer vicarious liability to another party," not "as an affirmative theory of recovery." Id. at 313-314 (punctuation and emphasis omitted). But a careful reading of the case reveals that the court rejected this argument only insofar as the defendants contended that the doctrine of respondeat superior could not render the defendants vicariously liable for the conduct of agents under their supervision if the agents were borrowed from another employer. See id. at 314 (rejecting the contention that "a plaintiff injured by the negligent acts of hospital personnel while they were working as borrowed servants of an operating room doctor has no affirmative cause of action against the doctor under respondeat superior" because "say[ing] that a plaintiff has no affirmative cause of action against a negligent actor's employer [would be] contrary to the doctrine of respondeat superior," and the negligence of a "borrowed servant" could render an employer liable under the "basic principle of respondeat superior"). In other words, while the Court of Appeals in *Hendley* purported to hold that the plaintiff could use the borrowed servant doctrine as a basis for holding the defendant vicariously liable, the court in fact approved only the use of respondeat superior for that purpose. To the extent that *Hendley* could be construed as authorizing the use of the borrowed servant doctrine as an independent basis on which to hold a defendant vicariously liable, rather than as a defense to a respondeat superior claim, we disapprove that reading.

scope of the special master's business. Because Georgia law does not recognize vicarious liability claims premised on the borrowed servant doctrine, Plaintiff cannot hold Defendants vicariously liable under that doctrine.

3. As explained above, Defendants were not entitled to partial summary judgment on the issue of vicarious liability because, while there were no genuine issues of material fact regarding their vicarious liability under OCGA § 51-1-38 or the borrowed servant doctrine, the evidence presented on summary judgment created a jury question as to whether the defendant physicians were vicariously liable under the doctrine of respondeat superior for any negligence committed by the medical student during Plaintiff's surgery. Accordingly, we reverse the judgment of the Court of Appeals, which affirmed the trial court's grant of partial summary judgment to Defendants on the issue of vicarious liability.

*Judgment reversed. Peterson, CJ, Warren, PJ, and Bethel, Ellington, McMillian, LaGrua, and Pinson, JJ, concur.*