**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 26, 2026**

# In the Court of Appeals of Georgia

A25A1909. BARLOW et al. v. SHC SERVICES, INC.

Davis, Judge.

In this wrongful death action, Kelley Barlow and Bradley Tarrant, individually and as executors of the estate of Clifford Tarrant, appeal from the trial court's order granting summary judgment in favor of defendant SHC Services, Inc. On appeal, the appellants argue that the trial court erred in: (1) applying the borrowed servant doctrine; and (2) granting summary judgment on their claims for negligent retention. For the reasons set forth below, we affirm.

"We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *9766, LLC v. Dwarf House, Inc.*, 331 Ga. App. 287, 288 (771 SE2d 1) (2015) (citation omitted).

So viewed, the record shows that SHC is a travel nursing agency which employs nurses and contracts with healthcare facilities to provide temporary medical staffing. John Blake was one of SHC's traveling nurses. From 2004 to 2014, prior to his employment with SHC, Blake worked in the emergency department at Grady Hospital. SHC received a reference from his supervisor at Grady, who rated him "Excellent" in clinical skills, quality of work, interpersonal skills, and reliability. Blake worked at Northeast Georgia Medical Center Barrow from 2015 to 2018 and received two references from his time there. His reviewers rated him "Excellent" and "Very Good," with both commenting that Blake "was a great nurse." From September 2018 to December 2018, Blake worked a three-month assignment at A. O. Fox Hospital. Blake only received "Satisfactory" ratings from his manager there, with the manager commenting that "We have concerns about [Blake,] he seems to 'zone out[,]' does not work well with other staff even when placed with different staff at a 2nd location[. C]oncerns are consistently brought up about his abilities to function as [a registered nurse]."

Blake began his assignment at Phoebe Putney Memorial Hospital ("PPMH") in February 2019 and completed it in May 2019. His assignment there was governed

by the "Master Agreement for Staffing Services" between PPMH and SHC. Under the agreement, PPMH had "the sole discretion to assign duties, shifts, units, assignments, etc." to an SHC nurse during their assignment. PPMH also agreed to provide an orientation, in which PPMH would include an explanation of job responsibilities and PPMH policies, as well as any OSHA-compliant training. PPMH provided this orientation to Blake prior to his assignment.

PPMH could cancel all or part of a nurse's assignment with 14 days' notice. However, PPMH could immediately terminate a nurse for cause for the following reasons, determined solely by PPMH:

> (1) Upon material violation by the [SHC nurse] of any provisions of this Agreement or the rules, policies, and/or procedures of the [PPMH].
> ...
> (3) Upon conduct by the [SHC nurse] which is considered by [PPMH] to be unethical, unprofessional, fraudulent, unlawful, or adverse to the interest, reputation or business of the [PPMH].
> ...
> (12) Upon the determination of [PPMH] in good faith that the [SHC nurse] is not providing adequate patient care or that the health, safety or welfare of patients is jeopardized by continuing the employment of the [SHC nurse].

Blake's employment agreement with SHC provided that he was an at-will employee and could be terminated at any time.

In March 2019, Clifford Tarrant, the decedent, arrived at the PPMH emergency department reporting a gastrointestinal bleed. Blake conducted his initial triage assessment at 9:00 p.m., drew seven vials of blood, and placed them on the bedside table to await an order from a physician. About thirty minutes later, a lab technician picked up the vials, said they had clotted, and threw them away. A physician later saw Tarrant and ordered blood tests. At around midnight, a nursing assistant drew blood from Tarrant, and the results came back at 1:24 a.m. Based on these results, the doctor ordered a blood transfusion. During the infusion, Tarrant experienced a massive gastrointestinal hemorrhage and died.

The appellants — Tarrant's children — filed a renewal action against PPMH, Blake, and SHC. As for their claims against SHC, they alleged vicarious liability and negligent hiring and retention. SHC filed a motion for summary judgment, contending that Blake was a borrowed servant, and thus SHC had no vicarious liability, and that the evidence in the record did not support the appellants' negligent hiring and

retention claim. The trial court agreed and granted SHC's motion. This appeal followed.

1. The appellants first argue that the borrowed servant doctrine does not apply in this case. They contend that PPMH did not have the exclusive right to discharge Blake and that SHC admitted that Blake was an employee acting within the course of his employment. We disagree.

"Georgia law has long recognized the common-law doctrine of respondeat superior, which is also known as the 'master-servant' rule." *Statham v. Quang*, 321 Ga. 533, 539(2)(b)(i)(A) (915 SE2d 864) (2025) (quotation marks omitted).

> In the respondeat superior context, where vicarious liability for the acts of servants depends upon the master's right of control over the acts of the servants, the borrowed servant doctrine addresses the fact that a servant may have more than one master as a result of being loaned from one employer to another, but that both masters rarely have control over the actions of the servant at the same time.

Id. at 540–41(2)(b)(i)(B) (quotation marks omitted).

> [T]he 'borrowed servant' doctrine is a widely recognized exception to the doctrine of respondeat superior, under which a master (often referred to as a 'general master') who lends his servants to another master (often referred to as a 'special master') is not responsible for any

> negligence of the servant committed within the scope of his employment by the other.

Id. at 541(2)(b)(i)(B) (quotation marks omitted). "[A]s a general matter, a general master's agent should be considered a 'borrowed servant' of a special master if, on the occasion when an injury occurred, (1) the special master had complete control and direction of the servant for the occasion, (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant." Id. (quotation marks omitted). The parties here primarily dispute the applicability of the third prong.

(a) The parties first disagree as to the meaning of "exclusive" in PPMH's right to discharge Blake because both SHC and PPMH could discharge him.[1] This disagreement stems from certain language in the Supreme Court of Georgia's decision, *Six Flags over Ga., Inc. v. Hill*, in which the Court stated: "[I]t is undisputed that Six Flags had the exclusive right to discharge Hill, that is, *that Six Flags could unilaterally discharge Hill* from working on the stuck Mind Bender cars and from working at Six Flags." 247 Ga. 375, 378(1) (276 SE2d 572) (1981). Given this

[1] We address the appellants' arguments in a different order as presented in their brief.

"unilateral" language, this Court has thus interpreted "the phrase 'exclusive right to discharge the servant' … to mean the unilateral right to discharge, as opposed to the sole right to discharge." *Healthcare Staffing, Inc. v. Edwards*, 360 Ga. App. 131, 133(1) (860 SE2d 874) (2021); accord *Ga. Insurers Insolvency Pool v. Carpet Cycle, LLC*, 372 Ga. App. 408, 423(5)(a) (904 SE2d 506) (2024) (cert. denied). The Supreme Court, by contrast, continues to use the "the exclusive right to discharge" language, but it has cited *Six Flags* with approval. See *Statham*, 321 Ga. at 541(2)(b)(i)(B).

The Supreme Court has not offered further guidance on this issue and denied certiorari in *Ga. Insurers Insolvency Pool*. "Accordingly, we continue to follow our precedent in this area." *Wells v. Khan Shell, LLC*, ___ Ga. App. ___, ___ n.1 (923 SE2d 707) (2025), A25A2101, slip op. at 8 (Ga. App. Nov. 19, 2025). Thus, we interpret "the phrase 'exclusive right to discharge the servant' … to mean the unilateral right to discharge, as opposed to the sole right to discharge." *Healthcare Staffing*, 360 Ga. App. at 133(1).

(b) The appellants argue that PPMH did not have the exclusive (or unilateral) right to discharge Blake because SHC's agreement with PPMH required termination

for cause with certain repeated violations or termination without cause with 14 days notice.

Here, while the appellants focus on certain "repeated" reasons to terminate for cause,[2] the agreement also allowed for immediate termination for cause, as cited above, and termination without cause with 14 days notice. These conditions still gave PPMH the unilateral right to terminate Blake, which contrasts to the cases in which have held that this prong was not satisfied. Compare *Ga. Insurers Insolvency Pool*, 372 Ga. App. at 423(5)(a) (special master could not terminate employee but could only refer the employee to the general master for disciplinary action); *Healthcare Staffing*, 360 Ga. App. at 134(1) (special master could only request removal and general master had sole authority to terminate employee), with *Garden City v. Herrera*, 329 Ga. App. 756, 761(1) (766 SE2d 150) (2014) (special master had the "exclusive and unilateral right" to discharge employee even though the general master "retained some authority over [the employee], including the right to remove him from his assignment").

---

[2] For example, the agreement between SHC and PPMH allowed termination for cause upon "repeated failure by [the nurse] to follow behavioral norms generally applicable to all employees employed by [PPMH]."

Accordingly, the staffing agreement between PPMH and SHC satisfied the third element of the borrowed servant doctrine.

(c) The appellants also contend that SHC's admissions negate the second element of the borrowed servant doctrine, , that is, that SHC had no complete control and direction over Blake at the time of the incident. See *Statham*, 321 Ga. at 539(2)(b)(i)(B).

In the appellants' original lawsuit before their renewal action, SHC admitted that Blake "was working within the course and scope of his employment" with SHC. But this admission is consistent with the borrowed servant rule. The borrowed servant rule is an exception to respondeat superior liability. See *Statham*, 321 Ga. at 541(2)(b)(i)(B). Blake, as a travel nurse, was working within the course and scope of his employment with both SHC and PPMH. See id. at 540(2)(b)(i)(B) ("There are instances, under Georgia law, where one may be the servant of two masters.") (quotation marks omitted). And, under the staffing agreement, PPMH, rather than SHC, had control over Blake's "duties, shifts, units, assignments, etc." Thus, this admission was not fatal to the application of the borrowed servant rule.

2. The appellants argue that the trial court erred in granting summary judgment on their negligent retention claim against SHC. They contend that SHC was on notice that Blake "zoned out" and that his "zoning out" resulted in failing to get a timely blood draw.

"Liability for negligent retention arises when an employer retains an employee who the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff." *Advanced Disposal Servs. Atlanta v. Marczak*, 359 Ga. App. 316, 320(3) (857 SE2d 494) (2021). "[H]unches, impressions, and innuendo are insufficient to raise a question of fact[.]" *Cleveland v. Team RTR2, LLC*, 359 Ga. App. 104, 110(2)(b) (854 SE2d 756) (2021).

Here, the appellants point to no evidence of previous incidents where Blake may have "zoned out." Their only evidence is a previous employment review, where the reviewer stated that she had "concerns" about him "zon[ing] out." But "concerns and impressions" are insufficient to sustain a negligent retention claim. See *Cleveland*, 359 Ga. App. at 110(2)(b) (holding that coworkers' "concerns and impressions" of the employee's "weird" and "cocky" demeanor were insufficient

10

to sustain a negligent retention claim surrounding a sexual assault at a spa). Accordingly, the trial court did not err in granting summary judgment on this claim.

In sum, the trial court did not err in applying the borrowed servant doctrine or granting summary judgment on the appellants' negligence claims against SHC. We thus affirm.

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur.*